(Decided 24th February, 1871.

---

John W. Maury and Thomas H. Osbourn, trading as Maury & Co., *vs.* Andrew Coyle, by Annie S. Coyle, his Guardian.

*Bailment—Measure of Diligence required of Gratuitous bailees—Measure of damages.*

A deposited with M & Co., bankers, for safe keeping, certain coupon bonds of the United States bearing interest, payable in gold, on the 1st of May and November, in each year. These bonds were subsequently abstracted from their custody  After their abstraction, a receipt dated as of the day when the deposit was made, was given by the bankers to A, in which they promised to return the bonds on demand, or pay the full value thereof, including gold interest. The bonds were never returned. In an action against the bankers, tried on the 5th of April, 1869, to recover the value of these bonds, it was HELD :

1st. That the plaintiff was entitled to recover, if the loss or abstraction of the bonds occurred through the failure of the defendants to use such care as persons of common prudence, in their situation and business, usually bestow in the custody and keeping of similar property belonging to themselves.

2d. That the measure of damages was the value of the bonds at the time demand was made for them, and the value of the gold interest thereon, from the day when the same was payable, with interest on the value of

Maury and Osbourn *vs.* Coyle, Guardian.

the several instalments of such gold interest, due semi-annually, and interest on the principal sum from the 1st of November, 1868.

3d  That if the receipt did not express the terms of the deposit, but it was a simple bailment of the bonds, to be safely kept without reward, the plaintiff was entitled to recover, unless the same care and diligence were exercised by the defendants in their custody, and the measure of damages would be the same.

APPEAL from the Circuit Court for Prince George's County.

On the 22d of January, 1866, Dunning B. McNair, the grandfather of the appellee, acting for his daughter, Annie Coyle, mother and guardian of the appellee, deposited with the appellants, bankers and brokers in the city of Washington, for safe keeping, thirteen coupon bonds of the United States, for $1000 each, dated the 1st of November, 1865, the interest thereon payable in gold semi-annually on the 1st of May and November.  Nothing was to be received for keeping the bonds.  In April, 1866, McNair called at the office of the appellants and demanded the bonds for the purpose of cutting off the coupons for the interest due on the 1st of May, 1866, and was informed by the appellant Maury that the bonds were gone, having been abstracted from the safe, and disposed of by Leonard Huyck, who had access to the vault of the banking house of Maury & Co., having a power of attorney to act for Mr. Osbourn, the other member of the firm, who did not reside in Washington.  Sometime in May following, the appellant Maury gave to McNair a receipt, as follows:  "Received, January 22d, 1866, from Dunning B. McNair, $13,000, five-twenty U. S. bonds, dated the 1st of November, 1865, which we promise to return on demand, or pay the full value of the same, including gold interest."  This receipt was signed "Maury & Co.," the firm name, and is referred to in the instructions of the Court as Exhibit A. The bonds were never returned, and this action was brought by the appellee to recover their value from the appellants.

During the trial below, eight exceptions were taken by the defendants, to the last of which only, other reference than that to be found in the opinion of this Court, need be had.

*Eighth Exception:* The plaintiff offered three prayers, and the defendants ten. The Court rejected the plaintiff's first and second prayers, and granted the following instructions instead:

1st. That if the jury shall find from the evidence, that the plaintiff did on or about the 22d of January, 1866, deposit with the defendants for safe keeping, thirteen bonds of the United States, for $1,000 each, bearing interest payable in gold on the 1st day of May and the 1st day of November, in each year, and that said deposit was made on the terms of the agreement set out in the paper marked "A," which has been given in evidence, and that the defendants were then doing business in the city of Washington, as bankers and brokers, under the name and firm of Maury & Co., and that afterwards, on or about the 1st day of May, 1866, the plaintiff demanded said bonds from the defendants, and they were not then, and have not since, been returned to the plaintiff, then the plaintiff is entitled to recover, unless the jury shall further find that the bonds in question were lost or abstracted from the possession and keeping of the defendants, and that such loss or abstraction did not occur from any failure on the part of the said defendants to use such care as persons of common prudence, in their situation and business, usually bestow in the custody and keeping of similar property belonging to themselves, and that the measure of damages is the value of said bonds at the time of the said demand, and also the value of the gold interest thereon on the first days of November, 1866, May, 1867, November, 1867, May, 1868, and November, 1868, less the sums the jury shall find were actually paid to and realized by the plaintiff in cash paid to her, and money received by her from securities placed in her hands, with interest on the value of the several instalments of gold interest due

in each six months as aforesaid, and interest on the principal sum from the 1st day of November, 1868.

2d. That if the jury shall find from the evidence that the plaintiff, on or about the 22d day of January, 1866, deposited for safe keeping with the defendants, thirteen United States coupon bonds for $1,000 each, bearing interest, payable in gold, on the first days of May and November in each year; that the defendants were then doing business in the city of Washington, as bankers and brokers, under the name and firm of Maury & Co., and the said deposit was made with them as such bankers and brokers, and was a gratuitous deposit, for the keeping of which they were not to receive any compensation, and that such bonds were lost and abstracted from the possession and keeping of the defendants, so that the plaintiff did not and could not recover the same, and that said loss and abstraction occurred through the failure of the defendants to use such care in the custody and keeping of such bonds as persons of common prudence in their situation and business usually bestow in the custody and keeping of similar property belonging to themselves, then the plaintiff is entitled to recover, and that the measure of the damages is the value of the said bonds at the time of the said demand, and also the value of the gold interest thereon on the first days of November, 1866, May, 1867, November, 1867, May, 1868, less the sums the jury shall find were actually paid to and realized by the plaintiff, in cash paid and money received from securities placed in her hands, with interest on the value of the several instalments of gold interest due in each six months as aforesaid, and interest on the principal sum from the 1st of November, 1868.

The Court also granted the plaintiff's third prayer which need not be set out.

The Court rejected the defendant's first, second, fourth, fifth, sixth, seventh, eighth and tenth prayers, and in lieu thereof granted the following instruction, being a modification of their third prayer:

3d. That if the jury believe from the evidence that the firm of Maury & Co. was dissolved on or before the 6th of May, 1866, then that no acknowledgment of liability or promise by said Maury, made subsequently to the said dissolution of partnership (if found by the jury to have been so dissolved) can have any effect to bind Osbourn, or render him liable as partner.

The Court granted the ninth prayer of the defendants, being as follows:

9th. If the jury believe from the evidence, that the receipt filed under the commission and marked " Exhibit A," was not either executed or delivered on the day it bears date, and shall further find from the evidence, that it does not truly express the terms upon which the bonds were deposited by the plaintiff's agent with the defendants, then the jury are not precluded by said receipt from determining from the evidence what were the real terms of said deposit.

The defendants excepted, and the verdict and judgment being against them they appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY and ROBINSON, J.

*Daniel Clarke* and *Robert J. Brent*, for the appellants.

The special counts in the *narr.* were based on a supposed special contract, by which the defendants agreed to return the bonds, or pay their value. This supposed agreement was not signed until after the bonds were abstracted. Such an *ex post facto* contract was *nudum pactum*, and inoperative to bind the defendants.

There was no legal proof of the special contract of bailment set out in the special counts, and the defendants can only be held as bailees without compensation. If this be so there can be no recovery under the special counts for lack of proof to sustain them, and no recovery on the *indebitatus* counts, because a simple bailee, from whose custody the bailment has

been taken, can only be liable in a special action on the case. If, however, the conversion of the bonds by Huyck is to be considered as the act of the defendants, then the *tort* may be waived, and the money counts maintained for the proceeds of the bonds. If Huyck were a cashier or clerk and stole the *depositum* or wrongfully converted it while bailed to his employers, they are not liable. *Foster et al. vs. Essex Bank*, 17 *Mass.*, 479; *McManus vs. Crickett*, 1 *East*, 106.

The principle is that the cashier and clerks are only trusted in the proper business of their employers. If Huyck had been a co-partner and the firm had received the deposit, they might be responsible for his embezzlement. But he was no co-partner—only an alleged attorney of one of the co-partners. If he committed the fraud he did not do it under his power of attorney, for that must only relate to his transaction of the usual and ordinary business of the firm. 15 *Johns.*, 422; 3 *Pick*, 177; 10 *Wendell*, 461; 6 *Cowen*, 497.

Even if a co-partner commits a fraud in " *en autre droit*," and the others have no notice at the time, the firm is not liable even if they had benefit from it. *Ex parte Healon*, *Buck*, 386; *Ex parte Apsey*, 3 *Bro.*, 265; *Comyn on Contracts*, 626,

A firm is only liable for the frauds of a co-partner on the same principle that a principal is for the frauds of his agent, and that liability is qualified by the proviso that the agent was acting distinctly within the line of business entrusted to him. 1 *Parsons on Contracts*, ch. 3, sec. 9.

But this is a case where the receipt of a sealed package, with the name of McNair on it as owner, is not within the ordinary or usual business of a banking house. In *Foster vs. Essex Bank*, 17 *Mass.*, 479, this sort of *depositum* held the firm liable, because, it was there proved that it was the practice of the bank to receive such deposits. There is no such proof in this case, and therefore, the act of Maury in receiving the special deposit would not bind the firm.

The true test of liability is that a bailee who receives a special deposit for safe-keeping, without any reward or compensation for its care and custody, is only bound to bestow such care and diligence in its safe-keeping and custody as he bestows in the keeping and custody of his own property of similar character, and unless the same is lost through his gross negligence, he is not liable. *Coggs vs. Barnard,* 2 *Ld. Ray.,* 909; 1 *Parsons on Cont.,* 573, 580; *Foster vs. Essex Bank,* 17 *Mass.,* 479; 2 *Smith's Leading Cases,* 82, and cases cited in notes.

The amount of care which persons of common prudence in their situation and business, usually bestow in the custody and keeping of similar property belonging to themselves, is an *uncertain* and impossible standard to fix.

*C. C. Magruder* and *Joseph H. Bradley, Sr.,* for the appellee.

Assuming the contract to have been made, as hypothetically put in the Court's first instruction, there was no error of which the defendants can complain. It was not a simple case of deposit without reward, but, in effect, implied a right in the defendants to use the bonds on certain conditions, viz: to return them on demand, *or* to pay the full value of the same, including gold interest.

The qualification put by the Court on the obligations of the defendants was, therefore, highly favorable to them.

The rule laid down as to damages in the same instruction, is in strict accordance with the terms of that contract.

The second instruction proceeds on the ground of a naked bailment of gratuitous deposit, and fixes the same rule as to the obligation of care and diligence on the part of the defendants as in the first instruction, and the measure of damages is the same.

It has been most strenuously maintained that a gratuitous bailee is responsible only for loss or injuries resulting from his *gross negligence.* But there is no such legal term as *gross negligence,* as distinguished from fraud or bad faith. It is a

mixed question of law and fact. *Wilson vs. Brett,* 11 *M. & W.,* 113; *Penn. Del. & Md. Steam Nav. Co. vs. Hungerford,* 6 *G. & J.,* 297.

It is not sufficient that a man shall keep goods so deposited as he does his own. *Tracy vs. Wood,* 3 *Mason,* 132; *Nelson vs. McIntosh,* 1 *Stark.,* 188; *Doorman vs. Jenkins,* 2 *Ad. & El.,* 256; *Dartneel vs. Howard,* 4 *B. & C.,* 345; *Edw'd on Bail.,* 69, 73; *Story on Bail.,* 62, 67.

But whatever may be the distinctions in respect to the degree of care required, the lowest possible obligation is to act with good faith, and that must depend on the nature of the deposit, and all the circumstances attending it. Measured by this standard, the instruction was right.

The defendants were bankers and brokers. The deposit was made with them in that character, because their business required them to have a proper and fitting place of security. Good faith demanded of them that they should, in keeping the bonds, use such care as persons of common prudence, in *their situation and business,* usually bestow in the custody and keeping of similar property belonging to themselves.

The fact that they were sealed up in an envelope and deposited in their vault, shows that the defendants so understood their contract.

They had no right to break the seal. *Jones on Bailments,* 81; *Lord Raymond,* 917. They had no right to use them, or to permit any one else to do so. *Hartop vs. Hoare,* 3 *Ark.,* 44; *Waterman vs. Robinson,* 5 *Mass.,* 303. The misuse, by letting Huyck have them, was bad faith. *Syd. vs. Hay,* 4 *T. R.,* 260, (*Buller's Op.;*) *Ulmer vs. Ulmer,* 2 *Nott & McC.,* 489; *Holbrook vs. Wright,* 24 *Wend.,* 169; *Brown vs. Hotchkiss,* 9 *John.,* 361.

The bonds were equivalent to money, passing by delivery, and therefore required more care than ordinary chattels, such as a man of *common prudence* would take of property of like kind. *Tracy vs. Wood,* 3 *Mason,* 132; *Tompkins vs. Saltmarsh,* 14 *S. & R.,* 275; *Bland vs. Wormack,* 2 *Murphy,* 378;

*Beardsley vs. Richardson*, 11 *Wend.*, 25. And in case of loss they were bound to show it did not occur through their fault. *Moody vs. Keener*, 7 *Port.*, 218.

BARTOL, C. J., delivered the opinion of the Court.

This action was brought by the appellee, to recover the value of certain coupon bonds of the United States, which had been deposited by the plaintiff with the appellants, Maury & Co., bankers, for safe keeping, and which were abstracted from their custody by Leonard Huyck, and were lost to the plaintiff.

In the course of the trial below, a number of exceptions were taken by the appellants, which will be disposed of in their numerical order.

The first exception was abandoned by counsel in the argument.

The second bill of exceptions presents the question of the admissibility in evidence of the exemplification of the record of Annie S. Coyle's appointment as guardian of the plaintiff. But this question has been rendered immaterial by the corrected record, showing that the suit was instituted by the appellee, "*by Annie S. Coyle, as his next friend;*" the question, therefore, whether the record-evidence of her appointment as guardian was properly authenticated, was immaterial, and need not be decided.

The third bill of exceptions raises the question of the admissibility of a part of the testimony given by the witness, McNair, in answer to the fifth interrogatory. After having stated that he called at the defendants' bank, and as agent for Mrs. Coyle, the plaintiff's guardian, had demanded the bonds, and was informed by Maury, one of the defendants, that Leonard Huyck had taken them, he then asked Maury " what right Mr. Huyck had to go into his vault and take them ?" Maury said, " he was acting for Mr. Osbourn, one of the defendants, the partner of Mr. Maury, that Huyck had a power of attorney from Mr. Osbourn to act for him."

Objection was made to the admissibility of that part of Maury's answer which stated that *Huyck was acting for Osbourn, Maury's partner, and had a power of attorney from Osbourn.* The ground of the objection is, that the power of attorney, if one existed, ought to have been produced, and could not be proved by the parol admission of the defendant.

If the object of the testimony had been to prove the contents of the power of attorney, or to show the nature or extent of the powers thereby conferred, or to prove that Huyck was in fact empowered by Osbourn to act for him in the business of the firm, it is very clear that the written paper would be the only competent evidence for that purpose. But such was not the purpose or effect of the testimony.

It was an admission or declaration made by one of the defendants, showing merely the character or capacity in which he understood Huyck was acting, and as explanatory of his own conduct in permitting Huyck to have access to the vault where the bonds were kept. For that purpose, it was clearly admissible.

It may be remarked further, that the fact itself was altogether immaterial; for the responsibility of the defendants in the action was in no way affected by the question whether Huyck was or was not the agent or attorney of Osbourn, or authorized to represent him in the business of the firm.

It is unnecessary to express any opinion upon the points raised by the fourth and fifth bills of exceptions, as we consider them altogether immaterial to the decision of the case. The right of action against the defendants as bailees in this case was wholly distinct from and independent of any claim which the plaintiff may have against Huyck, and it is no answer or defence to this action that collaterals had been placed in the hands of D. McNair, by Huyck, for the purpose of securing to the plaintiff the re-payment of the bonds. There is no evidence that the property and securities transferred by Huyck to D. McNair were accepted as payment or

satisfaction of the plaintiff's claim; they were mere collateral securities. All that the defendants can claim here by reason of such collaterals, is to have applied in reduction of the plaintiff's demand against them, such sum as he may actually have realized from those securities. It was not incumbent on the plaintiff in this suit to prove the exact state of Huyck's title in the property conveyed by him to D. McNair; and whether the deed offered for that purpose by the plaintiff, and objected to in the fourth bill of exceptions, was or was not authenticated according to law; and whether the parol evidence objected to by the appellants in the fifth bill of exceptions was or was not admissible, are questions wholly immaterial; and can furnish no ground for a reversal of the judgment. In support of these views we refer to *Brewster & Spratt vs. Frazier*, 32 *Md.*, 302, and the cases there cited in the opinion of the Court.

The sixth and seventh bills of exceptions were not argued or relied on by the appellants' counsel, and it is only necessary to say that there was no error in the ruling of the Circuit Court on the questions they present.

The eighth bill of exceptions brings before us for review, the rulings of the Circuit Court upon the prayers, and the instructions which were given to the jury.

There can exist no well grounded objection to the propositions of law contained in the first instruction. It submits to the jury the question whether the deposit of the bonds was made on the terms of the agreement set out in the " paper, marked A," and instructs them, upon that hypothesis, as to the whole law of the case. The principles announced on the instruction are well settled and elementary principles in the law of bailment, and need no argument or authority to be cited in their support.

The only objection to this instruction that was seriously urged by the appellants' counsel in the argument, was that there was no evidence legally sufficient to be submitted to the jury from which they could find that " paper A" had been

executed at the time it bears date or that it contained the terms in which the deposit was made.

This case was tried below before the new rules of practice, adopted by this Court under the Constitution, went into operation, and, consequently, this objection may be made on this appeal. It is necessary, therefore, to examine it. There is some confusion or conflict in the testimony of the witnesses McNair, Coyle and Maury, with regard to paper A.

Maury, the defendant, was asked the following question:

"*Sixth Interrogatory.* Do you or do you not know whether at the time of the delivery or deposits of the said United States bonds, or evidences of debt referred to by you in your reply to the preceding interrogatory, by the plaintiff to the defendants, trading as bankers and brokers as aforesaid, any receipt was given for the same; if yea, state all you know about it; and if you have said receipt produce it before the commissioner?"

To this the witness answered: "Such a receipt was given, (the witness refers to receipt handed him by commissioner and herewith annexed, marked "A" and heretofore filed.)"

In the face of this testimony from one of the defendants, it cannot be successfully contended that there was error in submitting the question to the jury. The question of the genuineness of the paper and the time of its actual execution was one for the jury to determine; and whatever conflict of evidence there may have been on that subject was exclusively for their consideration.

The second instruction was based on the hypothesis that the jury might find that the terms of the deposit were not expressed by paper "A," and excluding that paper from their consideration, treated the transaction as a simple deposit or bailment, for safe keeping, without reward or compensation, and we think the law governing the case in that aspect, was correctly expounded to the jury.

The counsel for the appellants have argued that there was error in defining the measure of diligence imposed by the law upon the bailees in such case.

Maury and Osbourn *vs.* Coyle, Guardian.

The Court required the jury to find, in order to entitle the plaintiff to recover, that the loss or abstraction of the bonds from the defendants' custody occurred "*through the failure of the defendants to use such care in the custody and keeping of such bonds, as persons of common prudence in their situation and business, usually bestow in the custody and keeping of similar property belonging to themselves.*"

In our opinion this was a correct statement of the nature and extent of the obligation of the defendants as bailees, arising from the facts submitted to the jury in the second instruction. They were bound to use ordinary diligence in keeping the deposit, and the language of the instruction was a correct definition of what the law declares is ordinary diligence. *Story on Bailments, secs.* 11, 15.

Objection was made in the argument to the rule or measure of damages laid down in the Court's instructions, but we think there was no error in this respect.

Unquestionably, if the jury found under the first instruction for the plaintiff, the measure of his recovery laid down by the Court below was in exact conformity with the contract as evidenced by "paper A," whereby the defendants "promised to return the bonds, or to pay the full value of the same including gold interest."

So, if the jury found for the plaintiff under the second instruction, the proper measure of damages was as therein stated.

It was suggested in the argument that inasmuch as the interest on the bonds was payable by the United States in gold, the jury ought to have been directed, as to that part of the plaintiff's claim, to render their verdict payable in gold, so that the judgment might be rendered thereon accordingly, in conformity with the decision in *The Chesapeake Bank vs. Swain & Abell,* 29 *Md.,* 483.

To this view we do not assent. It was proper for the jury to render their verdict for the aggregate amount of the plaintiff's damages ascertained as the Court directed.

The hypothesis of the second instruction was that the relation between the parties was one created by the law regulating bailments or simple deposits, and the defendants' liability arose from the breach or violation of their duty as bailees. The recovery sought was not of the specific thing deposited, but for damages for its loss; and the true measure was the value of the deposit, and such were the instructions given to the jury. In this respect, therefore, the instructions were right.

By granting the ninth prayer of the defendants the questions were properly submitted to the jury whether "paper A" was executed or delivered on the day of its date, and also whether it truly expressed the terms on which the deposit was made.

By the *third* instruction given to the jury, the defendants had the benefit of the instruction asked for in their third prayer; the refusal of the prayer is therefore no cause for reversal.

It is unnecessary to refer particularly to the other prayers of the defendants which were rejected. As the instructions given to the jury correctly expounded the law, and covered the whole case, there can exist no ground for reversal by reason of the refusal to grant any of the defendants' prayers. They were not denied the benefit of any legal proposition before the jury to which they were entitled.

For the reasons stated the judgment will be affirmed.

*Judgment affirmed.*

(Decided 3d March, 1871.)