## JOHN V. SCHERMER *vs.* ERNEST NEURATH.

*Gratuitous bailment—Actionable Negligence—Conversion— Liability of a Gratuitous bailee—Want of ordinary diligence—Province of the Court and Jury.*

S. being a guest of N., deposited with him for safe-keeping, without reward or profit, four United States coupon bonds of the value of $1000 each, and a bond of the value of $500. N. agreed to take care of the bonds solely for the accommodation of S., he placed them in a box in which he kept his own valuable papers and locked it, and put the box in a bureau drawer in his bed-room, and locked the drawer. This disposition of the bonds was made with the knowledge and consent of S. Some time afterward, S. being desirious of obtaining the coupons then due, went to the house of N. where he had ceased to reside, and they going up stairs together, N. unlocked the bureau drawer, took out the box, unlocked it, and handed the bonds to S., who cut off the coupons, and returned the bonds to N., who replaced them in the box and locked it, and put the box in the bureau drawer and then locked the drawer. Subsequently a female thief entered the house of N., "went up stairs and found the doors open, went first into the front room and found the bureau drawers open, then went into the adjoining room and found the second drawer of the bureau in that room locked; she broke the lock and took out the box, broke the lock of the box, and took out the four $1000 bonds of S., and the papers of N., and left the house without seeing any one." Some time before the theft N., without the knowledge of S., had withdrawn the $500 bond and deposited it with certain brokers as collateral security for money borrowed by a friend, whose note he had endorsed. He subsequently, however paid to S. $526.25, the amount due on the face of the bond with interest to date. An action was brought by S. against N. to recover the value of the bonds. The *narr.* contained three counts—one in trover, and two in case for negligence HELD:

1st. That the evidence offered by the plaintiff was not legally sufficient to warrant a jury in finding, that the bonds were lost by the actionable negligence of the defendant.

Schermer *vs.* Neurath.

2nd. That the use of the bond for $500 by the defendant, was a breach of faith, and for its conversion he was liable under the count in trover; but such conversion was neither in law nor in fact, a conversion of the four bonds for $1000, each.

The liability of a gratuitous bailee is not founded on contract, and he is only bound to observe such care in the custody of property committed to his keeping, as persons of ordinary prudence in his situation and business, usually bestow in the custody and keeping of like property belonging to themselves.

Want of ordinary diligence is, as a general rule, a question for the jury; but when the proof offered by the plaintiff is wholly insufficient to justify a jury in finding the want of such ordinary diligence, it is within the province of the Court to so instruct the jury.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*First Exception.*—The plaintiff offered to prove by a competent witness, that within a few days after the robbery of the bonds, the defendant stated to the witness that the stolen bonds belonged to the plaintiff, and that he considered himself responsible to the plaintiff for their loss; that the plaintiff should lose nothing by the theft; that he would pay the interest to him the same as the Government, and if the bonds were not recovered he would pay to the plaintiff the value of the same, if he had to sell his house to do so. To the admissibility of this evidence the defendant objected, and the Court (GAREY, J.) sustained the objection. The plaintiff excepted.

*Second Exception.*—The plaintiff offered fifteen prayers, and the defendant offered seven. The Court rejected all the prayers of the plaintiff, and the sixth and seventh prayers of the defendant. The other prayers of the defendant the Court granted. The plaintiff excepted. The following prayer only, of the defendant, it is deemed proper to insert:

5. If the jury find from the evidence that the defendant converted to his own use, and wrongfully deprived the plaintiff of the use and possession of the bond of the Government of the United States, for the payment of five hundred dollars, mentioned in the first count of the declaration, and if they further find from evidence that thereafter the defendant paid to the plaintiff the par value of the said bond, with all interest due on the said bond to May 19th, 1879, then the measure of the damages which the plaintiff is entitled to recover under the said first count of the declaration for the said bond for five hundred dollars, is the excess of the market price or value of the said bond for five hundred dollars, over and above its par value on the day the defendant converted it to his own use, with interest on such excess, if the jury shall find there was such excess, from the day the defendant converted the said bond for five hundred dollars to his own use to the present time.

A verdict was rendered on the 2nd of April, 1880, for the plaintiff under the instructions of the Court for $124.55, and judgment was entered thereon, with interest and costs. The plaintiff appealed.

The cause was argued before BARTOL, C. J., BOWIE, MILLER, ALVEY, ROBINSON and IRVING, J.

*Albert Ritchie* and *John C. King,* for the appellant.

*Arthur Geo. Brown* and *I. Nevett Steele,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is an action by the appellant to recover the value of four United States coupon bonds of the value of $1000 each, and one bond of the value of $500 which were left with the appellee for safe-keeping, and which were afterwards stolen by a female thief, known as Mary Miller.

The evidence shows that after an absence of several years in Europe, the plaintiff returned to Baltimore in October, 1875, and stopped at the house of the defendant, his brother-in-law. He had on his person at the time the bonds in question, enclosed in an envelope, and the envelope in his pocket-book. Being about to retire to his bed-room, he asked the defendant whether he should take the bonds with him, to which the defendant replied " that he thought it would be safer to leave them with him." Where-upon the plaintiff handed the bonds to the defendant, and the latter in the presence of the plaintiff put them in a small wooden box, in which he kept his valuable papers, and locked the box, and put the box in a bureau drawer in his bedroom and locked the drawer.

The defendant's house is at the corner of Park and Fayette Streets, and the first floor on both streets, is occu-pied by stores and shops, one of which being the defend-ant's shoe shop.

The second floor was occupied by the defendant and used for a parlor, dining-room and kitchen, and the third story for bed-rooms. The main entrance was on Park Street.

The plaintiff remained as a guest in the defendant's house for about two weeks, and, being about to go to North Carolina on a visit, he asked the defendant for his bonds; but, upon the suggestion by the latter that it was safer to let them alone, he consented to let them remain. On the same day he took from defendant a receipt describing the numbers and amounts of each bond, and stating that they were left by plaintiff with defendant for safe-keeping.

After his return from North Carolina, the plaintiff went to defendant's house for the purpose of cutting off the coupons then due. They went up stairs together, and the defendant unlocked the bureau drawer, took out the small box, unlocked it, and handed the bonds to the plaintiff. The

coupons were cut off by the latter, and, in his presence, the defendant again placed the bonds in the box and locked it, and put the box in the bureau drawer, and then locked the drawer.

The plaintiff continued to reside in Baltimore, but nothing more was said about the bonds until April following, when it was discovered that they, together with defendant's papers and jewelry, had been stolen.

Mary Miller, the thief, in her testimony, fully explains the manner in which they were stolen. She says: "About ten o'clock in the morning she left the house where she was staying, and walked around the city. About five or six o'clock she passed the house of the defendant, went up stairs, and found all the doors up stairs open. Went first into the front room and found the bureau drawers open, then went into the adjoining room, and found the second drawer of the bureau in that room locked. She broke the lock and took out the small box, and broke the lock of the box, and took out the plaintiff's bonds and the defendant's papers. She then went into the front room and took three watches and some jewelry, and then left the house without seeing any one."

It appears, also, that some time before the theft by Mary Miller, the defendant, without the knowledge of the plaintiff, deposited the $500 bond with Wilson, Colston & Co. as collateral security for money borrowed. He subsequently, however, paid to the plaintiff $526.25, the amount due on the face of the bond with interest to date.

The declaration contains three counts, one for trover and two for negligence.

In granting the defendant's, and in refusing to grant the plaintiff's prayers, the Court substantially instructed the jury that the plaintiff had offered no evidence *legally* sufficient to entitle him to recover under either count in the declaration.

After a careful examination of all the evidence offered by the plaintiff, we are obliged to say, that in our judg-

ment it was not legally sufficient to warrant a jury reasonably to find, either that the bonds were lost by the actionable negligence of the defendant, or that they had been converted to his own use.

The proof shows that the bonds were left with the defendant for safe-keeping, without any reward or profit, and that he agreed to take care of them solely for the accommodation of the plaintiff; that he put them in a box in which he kept his own valuable papers, and put the box in the bureau drawer in his bed-room, and that both box and drawer were locked; that this was done with the knowledge and consent of the plaintiff, and that they remained there with his consent. Under these circumstances the plaintiff cannot reasonably say, there was any negligence in regard to the place in which the bonds were kept. If this be so, there is no evidence to show that they were subsequently lost by any wrongful act or fault of the defendant. He was not required, of course, to keep the doors of the chamber rooms in the third story locked in the day time, much less could he be required to keep watch against such a bold and daring theft as this.

There is a well recognized distinction in regard to the care and diligence required of *a bailee for hire,* and one who undertakes to keep property *without reward, and solely for the accommodation* of another. In regard to the former, the liability is one founded on contract, and the bailee is obliged to exercise that care and diligence which is ordinarily exercised by persons in regard to the business or thing committed to his care; or as put in some of the cases defining the liability of a paid agent, he is responsible for the consequences of the " *want of ordinary diligence,*" or which is the same thing, for " *ordinary negligence.*"

In the case of a bailee without reward there is no contract, and he is liable only for wrongful conduct, or according to the expression used in many cases, gross negligence.

Schermer *vs.* Neurath.

So long ago as the celebrated case of *Coggs vs. Bernard,* 2 *Lord Raymond,* 909, HOLT, C. J., held, that a merely gratuitous bailee or other agent was liable only for *gross negligence.* See also *Shiells vs. Blackburne,* 1 *Hy. Blackistone,* 158. The terms "*gross and slight negligence,*" have, it is true, been the subject of some criticism of late, on the ground of not being legal terms, and not importing a precise and definite idea of actionable negligence, for which a bailee may be liable. And in *Wilson vs. Brett,* 11 *Meeson & Welsby,* 115, Baron ROLFE said, he "could see no difference between *negligence* and *gross negligence,* that it was the same thing with the addition of a vituperative epithet."

But be this as it may, in *Maury and Osbourn vs. Coyle,* 34 *Md.,* 235, this Court has laid down in explicit terms what seems to us the most satisfactory rule or test, by which the liability of unpaid bailees is to be determined, namely, that he is bound to observe such care in the custody of property committed to his keeping, as persons of *ordinary prudence* in his *situation and business,* usually bestow in the custody and keeping of like property belonging to themselves.

Want of ordinary diligence is of course as a general rule a question for the jury.

But where the proof offered by the plaintiff is wholly insufficient to justify a jury reasonably to find the want of such ordinary diligence, it is within the province of the Court to so instruct the jury.

And as we have heretofore said, the proof in this case being legally insufficient to prove actionable negligence on the part of the defendant, the rulings of the Court in this respect must be affirmed.

The only remaining question is whether there is any evidence to support the count in *trover?* And in support of this count, it was argued that the conversion by the defendant to his own use, of the bond for $500, was in

law a conversion of the other four bonds of $1000 each. The argument then goes so far as this, that when a half dozen articles, separate, and independent of each other, are delivered at the same time to a bailee, the conversion of one is the conversion of the whole, and this too, although the bailee was able and willing upon demand to return the other articles or property not taken.

We must confess we do not exactly see upon what principle this contention can be supported. Cases may be supposed, it is true, in which the conversion of part of a thing would be in law the conversion of the whole, provided the part so converted affected the whole. But to say that because the defendant took one bond and converted it to his own use, that this worked a conversion of the remaining bonds, would be to allow a fiction to prevail against the truth.

Nor do we find that any of the cases cited by the plaintiff sustain this position. In *Richardson vs. Atkinson*, 1 *Strange*, 576, where part of the liquor was drawn off, it was held to be a conversion of the whole, because the defendant had filled the vessel with water.

But in *Philpott vs. Kelly*, 3 *Ad. & El.*, 106, where a pipe of wine was left with the bailee for safe-keeping, and he caused part of the wine to be drawn off, and then used part of it after it was bottled, it was expressly held, that this did not constitute a conversion of the whole.

The use of the $500 bond by the defendant was of course a breach of faith, and for its conversion he was unquestionably liable under the count in trover, but the conversion of this bond was neither in law nor in fact a conversion of the other bonds which remained untouched in the place where they were deposited.

The evidence offered in the first bill of exceptions, as to the declarations of the defendant made a few days after the theft, to the effect, that he considered himself responsible to the plaintiff for the loss of the bonds, was also properly

rejected. His opinion or belief in regard to his liability did not affect it the one way or the other. Such declarations were inadmissible to prove negligence, because they state no facts from which negligence could properly be inferred.

Finding no error in the rulings below, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 2nd July, 1880.)