# THE BALTIMORE REFRIGERATING AND HEATING COMPANY *vs.* THOMAS KREINER.

*Action for Damage to Poultry in Cold Storage Cellar—Evidence—Opinion of Expert as to Construction of Cold Storage Warehouse and Appliances—Burden of Proof as to Negligence of Warehouseman—Instructions.*

In an action against a warehouseman to recover damages for alleged negligence in the custody of poultry stored for plaintiff in defendant's refrigerator cellar, evidence is not admissible to show that other poultry stored by defendant for plaintiff on previous occasions had kept for some months in a good condition; but since such evidence works no injury to the defendant its admission is not reversible error.

When the question is whether a cellar in defendant's cold storage warehouse, and the ice-box in which plaintiff's poultry had been put, were properly constructed or not, a witness who was in charge of the cold storage department of another company, and had so been for eight years, who had been in the cold storage business for upwards of twenty years, and who had inspected cold storage plants in several cities, is qualified to testify as an expert as to what is the proper and usual construction of ice boxes, etc.

When goods entrusted to a warehouseman for safekeeping are returned in a damaged condition, the burden of proving that the damage was caused by the bailee's negligence is upon the bailor in an action by him; and it is not to be presumed as matter of law from the fact of damage. But it is not necessary for the bailor to show specific acts of negligence causing the damage. It is for the jury to determine from all the facts of the case whether negligence should be inferred, when such facts are legally sufficient to justify the inference.

In an action to recover damages for injury caused to dressed poultry stored in defendant's cold storage warehouse, the question of defendant's negligence should be submitted to the jury

when there is evidence to the effect that the defendant's cellar and ice box were not properly constructed; that the ice box was not water-tight, as well as air-tight; that there was a crevice under the door which allowed water from a broken main to run into the freezer, and that there was no drain pipe leading from the cellar to carry off water.

The defendant offered evidence to show that the damage to plaintiff's poultry, stored in defendant's cellar, was caused by the bursting of a city water main which flooded the cellar; that such an occurrence had not happened before for sixteen years, and defendant contended that it was not bound to provide against such an accident. The plaintiff proved that defendant's cellar was not properly constructed, and that if it had been, the bursting of the main would not have caused the injury. *Held,* that under these circumstances, defendant is not entitled to have the jury instructed that if they find that the poultry was delivered to plaintiff in damaged condition, and that such condition was caused by the bursting of a city water main, the burden is on the plaintiff to show that there was negligence on the part of the defendant which caused the damage.

*Decided January 12th, 1909.*

Appeal from the Baltimore City Court (NILES, J.).

*Plaintiff's 1st Prayer.*—If the jury find that the squabs, ducks and chickens mentioned in the evidence were in good and marketable condition and properly prepared and packed for cold storage when they were deposited by the plaintiff and accepted by the defendant for cold storage during the months of July and August, 1904 (if the jury find such deposit and acceptance), and that the same squabs, ducks and chickens were in a damaged condition when they were delivered by the defendant to the plaintiff during the months of January and February, 1905 (if the jury find they were so delivered); and if they further find that the damaged condition of said poultry was due to the negligence of the defendant; that is, to the failure of the defendant, or its agents or employees,

to exercise that degree of care and skill or to employ those means and facilities which ordinarily prudent business men in the same business and under the same circumstances would have exercised and employed in the storage and preservation of like goods so deposited, then their verdict will be for the plaintiff. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the jury believe that the poultry mentioned in the evidence was in good and marketable condition and properly prepared and packed for cold storage, when it was delivered by the plaintiff to the defendant during the months of July and August, 1904 (if the jury find such delivery), and that the same poultry was in a decayed and damaged condition when it was withdrawn by the plaintiff from the defendant's warehouse, during the months of January and February, 1905 (if the jury find it was so withdrawn), and that there is nothing in the nature of poultry such as the plaintiff's to cause it to become decayed and damaged from being left in cold storage for the time the plaintiff's poultry was; and if the jury further find that during the interval between the delivery of said poultry to the defendant's warehouse and its withdrawal therefrom said poultry was in the exclusive possession of the defendant, then the law presumes that the damage to said poultry was caused by the negligence of the defendant, and the verdict of the jury will be for the plaintiff, unless the defendant shows to the satisfaction of the jury that its negligence (if the jury find that it was negligent) did not cause the damage to said poultry. (*Granted.*)

*Plaintiff's 3rd Prayer.*—The plaintiff prays the Court to instruct the jury that even though they find that the cellar of the cold storage warehouse of the Baltimore Refrigerating and Heating Company was, without any carelessness or negligence on the part of said company, flooded on December 28, 1904, by the bursting of a city water main one square and a half away from said cellar, and that the damage to the plaintiff's poultry (if the jury find that it was damaged) was caused by such flooding of the cellar, the plaintiff

is still entitled to recover in this case; provided, the jury further find that the said cellar was not a reasonably proper and safe place for the cold storage of the plaintiff's poultry; that is to say, that an ordinarily prudent business man in the same business and under the same circumstances, would not have stored similar poultry in said cellar.    (*Granted.*)

*Plaintiff's 4th Prayer.*—The plaintiff prays the Court to instruct the jury that, although they may find that the cellar of the defendant company's cold storage warehouse was, without any negligence or carelessness on the part of said company, flooded on December 28, 1904, by the bursting of a city water main one square and a half away from said cellar, and although they find that the damage to the plaintiff's poultry (if the jury find that it was damaged) was caused by such flooding, still if the jury further find that ordinarily prudent business men in the same business and under the same circumstances, in case they had stored similar goods in said cellar, would have provided and kept in working order some outlet or drainage from said cellar, and that the defendant did not provide or keep in working order such outlet or drainage from said cellar, then the plaintiff is entitled to recover in this case; provided, the jury further find that said flood of water would not have gotten into the ice box or freezer where the plaintiff's poultry was (if the jury so find) if the defendant company had provided such outlet or drainage and kept it in working order.    (*Granted.*)

*Plaintiff's 5th Prayer.*—That even though the jury find that the cellar of the cold storage warehouse of the Baltimore Refrigerating and Heating Company was flooded on December 28, 1904, by the bursting of a city water main one square and a half away from said cellar, and that the damage to the plaintiff's poultry (if the jury find it was damaged) was caused by such flooding, the plaintiff is still entitled to recover in this case; provided the jury further find that the water from the city's main would not have gotten into the ice box or freezer built in said cellar where the plaintiff's poultry was (if the jury so find) if the defendant company

had exercised reasonable care, as defined in the plaintiff's third prayer, in the construction of said ice box or freezer, or in keeping the doors to said ice box or freezer closed. (*Granted.*)

*Plaintiff's 6th Prayer.*—That if the jury find for the plaintiff, then the measure of damages is the difference between the market value of the squabs, ducks and chickens in their damaged condition and the market price of good and marketable squabs, ducks and chickens of the same kind at the various times when said poultry was delivered by the defendant to the plaintiff, with interest at six per cent. from March 1, 1905, in the discretion of the jury. (*Granted.*)

*Defendant's 1st Prayer.*—The jury is instructed that no sufficient evidence has been introduced to show that the damage to the plaintiff's poultry was caused by any negligence on the part of the defendant, the Baltimore Refrigerating and Heating Company, and their verdict must be in favor of said company. (*Refused.*)

*Defendant's 2nd Prayer.*—If the jury believe from the evidence that the plaintiff stored with the Baltimore Refrigerating and Heating Company the poultry mentioned in the evidence and that the said poultry was damaged while in the warehouses of the Refrigerating Company by reason of the bursting of the city water main, which caused the water to run into the said warehouse, and if the jury further find that the Refrigerating Company took such care of said poultry as a prudent man would take under similar circumstances of his own property, then the verdict must be for the defendant, the Baltimore Refrigerating and Heating Company. (*Granted.*)

*Defendant's 3rd Prayer.*—If the jury find from the evidence that the plaintiff stored with the Baltimore Refrigerating and Heating Company the poultry mentioned in the evidence and that the said poultry was delivered to the plaintiff in a damaged condition, and such condition was caused by the bursting of the city water main, the burden is on the plaintiff to show that there was any negligence on the part

of the Refrigerating Company which caused the damaged condition of the poultry. (*Refused.*)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Robert H. Smith* (with whom was *Jacob France* on the brief), for the appellant.

*Bagby & Bagby,* for the appellee, submitted the cause on their brief.

WORTHINGTON, J., delivered the opinion of the Court.

This suit was instituted by the appellee against the appellant to recover the amount of loss which the former sustained by reason of the deterioration in quality of a large quantity of dressed ducks, chickens and squabs which he (the plaintiff) had in cold storage for hire, at the defendant's cold storage warehouse at 410 S. Eutaw Street in Baltimore City.

The plaintiff alleges negligence on the part of the defendant in failing to exercise due and proper care in managing and maintaining its cold storage warehouse, wherefore the poultry became decayed, mouldy and partially unmarketable. The remote cause of the injury seems to have been the bursting on December 28, 1904, of one of the City's water mains on Eutaw Street about 500 or 600 feet north of the defendant's warehouse. The water from this broken main ran underground along one or more of the several pipe lines in the street, and some of it reached, and made its way into defendant's cold storage cellar, flooding the cellar to the height of four or five feet and submerging a number of boxes containing the poultry in question. The cellar remained in this flooded condition for twenty-four hours or more, before the leak could be repaired and the water from the cellar removed.

The ice box or refrigerator where the poultry was stored was the rear part of the cellar, being separated from the front

part by a so-called insulated partition. In this partition was
a door opening from the front part of the cellar, or vestibule,
into the ice box. Under this door was a crevice one-sixteenth
of a inch wide and four and one-half feet long. There was
also a small gutter on each side of the cellar floor running
under the partition, intended to carry off water used in wash-
ing the freezer or ice box. This water was collected by means
of these little gutters in a hole in the vestibule part of the
cellar and carried out from thence in buckets or barrels.
There was, however, no drainage or sewer pipe in the cellar.
These facts are undisputed. The plaintiff's witnesses also
testified that a cold storage cellar was not a good place to
store delicate poultry like this, because there would be more
or less dampness about a cellar which would cause the poultry
to mould and deteriorate. That poultry properly prepared
and packed ought to keep from six to twelve months. That
there was nothing in the nature of poultry, such as this to
render it unmarketable or damaged from being left in cold
storage for six months or more. That this poultry was put in
cold storage when freshly killed, and after being carefully
prepared and packed for that purpose. That it was put in
during August, 1904, on to January, 1905, and about the
middle of January a box of squabs was taken out and the
squabs found to be discolored and dark, and all the poultry
was found to be in such a damaged condition that it had to
be sold for half price.

The defendant's witnesses testified that this cellar was dry
as a bone and the proper place for the storage of poultry.
That the temperature in the freezer was maintained at 4 to
13 degrees. Two of defendant's witnesses on cross-examina-
tion also testified that a freezer is made airtight, or is sup-
posed to be airtight, but not necessarily watertight; that they
did not provide against water.

In rebuttal two of the plaintiff's witnesses testified, against
the objection of the defendant, that a well constructed cold
storage cellar should contain a drain pipe or sewer to carry
off any superfluous water that might get in there, and also

.that a freezer or ice box should be made airtight and watertight.

During the progress of the trial the defendant reserved four exceptions, three to the rulings of the Court on the admissibility of certain evidence, and one relating to the prayers.

The verdict and judgment being for the plaintiff the defendant has appeared. 1st. The first exception is to the ruling of the Court in permitting the following question, propounded to the plaintiff, to be answered:

Q. "How about the poultry that you prepared and packed in July and August in other years, in the same way, and which you left until January and February following came out ?"

Ans. "It came out all right."

It is of course well settled that the facts of the particular transaction are ordinarily the only legitimate evidence of the inquiry and the manner and cause of its occurrence, and not other and different occurrences. But it is equally well settled that facts occurring before or after the suit are admissible if they afford a fair and reasonable presumption of the fact to be tried; it being left to the jury to determine their precise force and effect. *Brooke* v. *Winters*, 39 Md. 505; *Davis* v. *Calvert*, 5 G. & J. 269.

In the present case this evidence was offered, as stated in appellee's brief, "as tending to show that the injury to the plaintiff's poultry was due to some act on the part of the defendant, and not to either the nature of the poultry itself, or to the way it was packed by the plaintiff."

While we do not think the question a proper one to have been asked or answered, under the circumstances of this case, for the reason that the facts sought to be elicited thereby related to other occurrences too remotely connected with the issue in this case to enable the jury to fairly infer therefrom, either that this particular poultry was properly prepared and packed, or that the injury complained of was due to negligence or want of care on the part of the defendant, yet

we are unable to see in what manner the defendant was prejudiced by the answer given. In the case of *Baltimore, Etc., Co. v. Leonhardt*, 66 Md. 70, cited in support of defendant's contention as to this exception, the evidence was offered by the defendant to show that no accident had ever before happened to a passenger on the upper deck of one of its cars. This Court held that the evidence was properly excluded, the reason being of course that the defendant could not adduce evidence of proper care on its part, on former occasions as tending to show proper care on its part on the particular occasion then under investigation.

In the case of *Wise v. Ackerman*, 76 Md. 375, also relied upon by the defendant on this point, the offer was by the plaintiff to show that an accident, similar to that sued for in that case, had happened on a former occasion. This Court held the evidence inadmissible because it could not form "the basis of a well founded presumption as to the existence of negligence on the part of the defendant as the direct cause of the injury to the plaintiff," in the case then before the Court.

In the case at bar the evidence is offered by the plaintiff, and shows that on former occasions the poultry stored by plaintiff with the defendant came out all right.

While such evidence tended to show that the plaintiff had on former occasions properly prepared and packed the poultry stored by him with the defendant, yet, as we have said, the jury could not fairly infer therefrom how this particular poultry was packed or prepared.

At the same time it tended to show that there was nothing in the nature of dressed poultry such as this to prevent its keeping in good condition in a cold storage cellar, for several months, and also that the defendant did ordinarily manage and maintain its cold storage warehouse in a careful and proper manner.

The answer, therefore, taken altogether, was much stronger in favor of the defendant than of the plaintiff by whose counsel the question was propounded. For this reason we think this exception furnishes no reversible error.

2nd. The second and third exceptions relate to the action of the trial Court in permitting the plaintiff's witness, Gettier, in rebuttal, to answer the two following questions:

Q. "How ought a refrigerator situated as this used by the Baltimore Refrigerating and Heating Company to have been constructed?"

A. "All the refrigerators I have ever seen, and I have been in abattoirs here, and in Washington and in New York, and been all through all the abattoirs, and they all have sewers in the cellars.

"When the sewer main broke, it broke beside Swift & Co.'s warehouse, at the corner of Eutaw and Camden Streets, and we have as large, if not a larger cellar than the Baltimore Refrigerating and Heating Company, and we did not have a cent of damage because we had a sewer there."

Q. "I asked you how the ice box ought to have been constructed, or how they are usually constructed?"

A. "They are usually constructed airtight and water-tight."

The objection to these questions is in both instances on the ground that the witness had not shown proper qualifications to make him an expert on the subject of the construction of storage warehouses.

The admissibility of expert or opinion evidence is largely within the discretion of the trial Court, whose judgment is nevertheless always subject to review by this Court. *Dashiell* v. *Griffith,* 84 Md. 363.

It must be shown that the witness possesses such intelligence and such familiarity with the subject as in the sound discretion of the Court will enable him to express a well-informed opinion in regard thereto.

Some subjects of course require a much higher degree of intelligence and of special knowledge than others. It is therefore said that expert capacity is a matter wholly relative to the subject of the particular inquiry. In the present case besides the evidence of his qualifications contained in his answer to the first of the above questions, the witness had before the questions were put to him, testified that he was in

the employ of Swift & Co. engaged in the packing business, and had charge of, and looked after the cold storage department, and had done so for eight years; that for the last twenty-two or twenty-three years he had been working in the cold storage business; that he had been employed at three or four places where there were cold storage plants, including the abattoir in Baltimore; that he had been through some of Swift & Co.'s cold storage plants in New York, Washington and Norfolk; that he looked after the produce end of Swift & Co.'s business, such as poultry, butter and eggs; that he had knowledge of defendant's plant from packing goods there for Swift & Co. We think these opportunities for observation, together with the experience which he was shown to have had in the cold storage business, qualified the witness to answer the questions propounded to him.

3. The fourth exception relates to the granting of the plaintiff's six prayers and to the rejection of two of the defendant's prayers.

All the prayers are set out in full in the report of this case preceding this opinion.

The principal objection urged by the defendant's counsel is to the granting of the planitiff's second prayer. By that instruction the jury are told that if they find certain facts therein recited, "then the law presumes that the damage to said poultry was caused by the negligence of the defendant." The objection urged to this prayer is that it puts the burden of proof of negligence upon the defendant. More correctly speaking, it may be said to declare a *prima facie* case to have been made out, and to shift the burden of proof from the plaintiff to the defendant by the presumption of negligence, from certain facts recited, as a matter of law.

Several authorities outside of this State are cited by the attorneys for the respective parties in support of and against the correctness of this prayer.

But we think the substantial question has been passed upon and settled in at least two cases, heretofore decided by this Court.

One of these being the case of *Hamilton* v. *McGee,* 19 Md. 43. In this case an action was brought by a liveryman to recover damages for injuries to a horse which had been hired to the defendant.

This Court, speaking by Bartol, J., said : "We agree with the appellant's counsel that the onus of proving want of diligence and reasonable and proper care was on the plaintiff. But surely it cannot be said that there was no evidence from which the jury might find a want of reasonable care in this case. The horse when hired was sound and in good condition ; on the following evening, when returned, he was badly foundered, hardly able to walk, and died in a few days. One of the witnesses stated that in his opinion the horse was foundered by hard driving. On this point several witnesses testify that a horse may be foundered when properly and carefully used. But that was a question for the jury, properly left to them by the Court's instruction."

The other case in mind is that of the *American District Telegraph Co.* v. *Walker,* 72 Md. 454. In that case, The American District Telegraph Co. hired a boy to drive a two-horse team for the plaintiff. The horses ran away while in the boy's care, breaking the vehicle, and so seriously injuring one of the horses that it had to be shot, while the other horse was rendered unsafe to drive. In an action for damages against the Telegraph Co., this Court, speaking by Chief Judge Alvey, said : "That if negligence or want of skill in the bailee or his servant be the ground of action, the onus of proof is on the plaintiff."

The former of these two cases comes under the third head of Lord Holt's division of the subject of bailments, as explained in his opinion, delivered in the case of *Coggs* v. *Bernard,* 2 Lord Raymond's Report, 919 ; and the latter under the fifth head of such division.

The fifth head includes all cases where goods are entrusted to the bailee for safekeeping, or to be carried, or to have some work done upon them, for hire to be paid to the bailee.

But under both heads, when negligence is the ground of

the action, the burden of proving negligence is upon the bailor. The case at bar comes under the fifth head, and, according to the rule declared in the two opinions of this Court, just cited, the onus of proving negligence is on the plaintiff.

This does not mean, however, that the plaintiff must prove the specific acts of negligence which caused the injury, evidence from which the jury may infer such negligence is sufficient.

As in the case of *Hamilton* v. *McGee, supra,* while the Court held that the burden of proving negligence was on the plaintiff, yet, that there was evidence in the case from which the jury might infer negligence, without proof of the specific acts of negligence.

The vice of the plaintiff's second prayer is that it declares that negligence may under the circumstances set forth in the prayer be presumed as a matter of law, whereas it is for the jury to determine whether negligence may be inferred or presumed or not, taking into consideration all the facts and circumstances of the case.

The Court is to say whether any facts have been established by the evidence from which negligence may be reasonably inferred; the jurors have to say whether from those facts when submitted to them, negligence ought to be inferred. See *Schermer* v. *Neurath,* 54 Md. 491.

In the case of *Russell* v. *New York Steamboat Company,* 50 N. Y. 121, RAPALLO, J., speaking for the Court of Appeals of that State, says, at page 127: "The nature of an accident may itself afford *prima facie* proof of negligence, and we think, as the case stood, the Judge erred in not submitting the question of negligence to the jury."

In a later case from the same Court it is said, citing *Russell* v. *Steamboat Co., supra:* "While it is true, as a general proposition, that a bailor charging negligence on the part of the bailee, rests under the burden of proof, yet oftentimes slight evidence will shift the burden to the bailee." *Wintingham* v. *Hayes,* 144 N. Y. 1.

But that there is sufficient evidence thus to shift the burden of proof is not ordinarily for the Court to determine, but for the jury. In *Price's Case,* 29 Md. 420, this Court, speaking through ALVEY, J., says: "It is very true negligence may in some cases become a mere question of law to be determined by the Court, upon a given state of facts, either admitted or to be found by the jury. It is not, however, the duty of the Court to draw inferences or make deductions from evidence. To do that falls within the well-defined province of the jury, that Courts should be ever careful not to invade."

The circumstances of that case, it is true, were different from those in the case at bar, but the principle enunciated therein as quoted above is equally applicable here.

We think therefore that there was harmful error in granting the plaintiff's second prayer.

We understand that there is no objection to the remaining five prayers of the plaintiff, and we think these would fairly have instructed the jury had the erroneous second prayer been omitted altogether.

As to the defendant's first prayer, by which it was sought to withdraw the case from the consideration of the jury, we think it was properly rejected. There was evidence proper to be submitted to the jury from which they could have found want of proper construction of defendant's cold storage cellar, and ice box or freezer located therein, and that such want of proper construction was the proximate cause of the injury to the plaintiff's poultry.

The Court will not grant a prayer that there is no evidence legally sufficient to show want of reasonable care on the part of the defendant, unless there is no evidence in the case from which such want of reasonable care may reasonably be inferred by the jury.

As to the defendant's third prayer which was also rejected, while in the abstract it seems intended to express a correct proposition of law, yet not only is its phraseology somewhat obscure, by reason of the use of the word "caused," twice in

different senses, in close connection with each other, but it also ignores the fact that the defendant's witnesses in testifying to the breaking of the water main and the flood of water that in consequence ran into the cellar of defendant, also testified to the fact that the freezer was not airtight or watertight, but that there was a crevice under the freezer door, and also an opening under the partition where the gutter was located, which crevice and openings allowed the water to run into the freezer, thereby causing the injury complained of, and also that there was no drain pipe or sewer leading from the cellar; from which facts the jury might have inferred want of due care without any further proof on the subject.

In order to make clear the objection to this prayer, it may be useful to say here a word upon the subject of the burden of proof.

As we have already stated, in this case, the burden is upon the plaintiff to show negligence on the part of the defendant; that is to say, the plaintiff must show that some negligent act or omission of the defendant was the proximate cause of the injury in order to entitle him to recover.

If the plaintiff, by his testimony in chief, make out a *prima facie* case, and the defendant, instead of producing evidence to negative the facts which the plaintiff's evidence tends to establish, proposes to show a distinct proposition which avoids the effect of the plaintiff's evidence, then the burden of evidence shifts and rests upon the party proposing to show the latter fact.

If evidence tending to prove this fact be adduced then the *onus* is cast again upon the plaintiff to show that notwithstanding such distinct fact the adverse party is still responsible because such fact does not excuse him. Such a defense amounts really to a plea of confession and avoidance . As is said by Thayer in his *Preliminary Treatise on Evidence,* "the parties are doing the work at the trial that it is the preliminary function of the pleadings to do. Practically they are pleading *ore tenus.*"

In this case, the defendant confesses the injury, but under-

takes to avoid responsibility by showing the bursting of a City water main, and the flooding of its cellar in consequence. Such an occurrence, the testimony shows, had not happened before for at least sixteen years, and it is contended that it is one that the defendant could not be expected to provide against. But that was a question for the jury to determine, for if, notwithstanding such unusual occurrence, the defendant could, by the exercise of ordinary care and foresight, have averted the injury, he still must answer in damages to the person injured. *Van Zyle on Bailments,* secs. 202-203-204.

In undertaking to show, by way of confession and avoidance, that this unusual occurrence was the cause of the damage to the poultry, the defendant's witnesses, as we have already stated, also testified to facts which in the minds of the jury might have given rise to the inference of the want of ordinary care and foresight on the part of the defendant, without further proof on either side.

And besides this, the plaintiff in rebuttal did adduce evidence still further tending to show a faulty construction of the defendant's cold storage cellar, and had the defendant's third prayer been granted the jury might have inferred that, even if they deemed all the evidence taken together sufficient to warrant them in finding such want of ordinary care and prudence, yet that in the opinion of the Court some further evidence on the part of the plaintiff was necessary to justify them in so finding.

Negligence is a question for the jury to determine from all the facts and circumstances of the case, and not from the evidence of either party alone.

For these reasons we think the defendant's third prayer, if granted would have been misleading to the jury, and that under the circumstances of this case, it was properly rejected.

But for the error in granting plaintiff's second prayer, the judgment must be reversed and a new trial awarded.

> *Judgment reversed with costs to the appellant and a new trial awarded.*