## JAMES RICKY HERRING *v.* STATE OF MARYLAND

[No. 1395, September Term, 1978.]

*Decided July 16, 1979.*

The cause was argued before THOMPSON, LISS and COUCH, JJ.

*George Z. Petros,* with whom were *Fisher & Walcek* on the brief, for appellant.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Michael Gallavan, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Appellant, James Ricky Herring, was indicted by the grand jury for Prince George's County for housebreaking under Maryland Code (1957, 1976 Repl. Vol.) Art. 27, Section 30 (b); housebreaking under Art. 27, Section 31A; two counts of larceny and two counts of receiving stolen goods.

Appellant moved to suppress evidence seized from him on the ground that an unconstitutional search and seizure had taken place. After taking testimony and hearing argument, the trial judge denied the motion to suppress. A court trial thereupon ensued during the course of which the State offered as Exhibits 1 and 2 the physical evidence seized from the appellant. Appellant objected to the admissibility of the evidence, the objection was overruled, and the exhibits were received in evidence. The trial court found the appellant guilty under the first count of the indictment and sentence was thereafter imposed. It is from this judgment that this appeal was filed.

The sole question raised by this appeal is whether the trial court erred in denying appellant's motion to suppress and in overruling the appellant's objection to the admission of the physical evidence seized by the State.

The facts in the case are relatively uncomplicated. On June 13, 1978, the appellant and another individual were walking down Saint Barnabas Road in Hillcrest Heights, Maryland. Detective Morrissette, who was investigating several unsolved breaking and enterings in the area, suspected the appellant and his companion were involved in the incidents. Morrissette, upon being notified that the appellant was present on Saint Barnabas Road, proceeded to intercept the appellant for questioning. The appellant was taken to the police station in Oxon Hill, Maryland and questioned in Detective Morrissette's office. During the course of the questioning, the appellant removed a jacket (sweater) he was wearing and placed it on his chair. At the conclusion of the questioning, the appellant was allowed to leave. In the course of leaving, appellant forgot that his jacket was hanging on the chair. The jacket contained several pockets, one of which was closed by a zipper. After appellant's departure, Detective Morrissette took possession of the jacket, which he knew

belonged to the appellant, and felt the pockets. Upon becoming aware that the zipped pocket contained some unknown objects, he unzipped the pocket and found several items of women's jewelry. Immediately upon seeing the jewelry, he suspected that it was contraband and locked the jewelry and jacket in his desk drawer. The detective maintained that his search of the jacket and the seizure of the jewelry was done for the purpose of protecting the property itself and the police from false claims.

The State contends that the search and seizure involved was for the purpose of a bona fide inventory of the contents of the jacket for the purposes suggested by the detective. It is conceded that at the time of the search, the State had no knowledge of the theft of the jewelry nor of its ownership. The following morning after the search of the jacket Detective Morrissette began an investigation of his files in an attempt to match the jewelry with a specific breaking and entry report. He was able to secure a match and proceeded to obtain an arrest warrant for the appellant.

It is acknowledged by the appellant that the State came into legal custody of the appellant's jacket when he forgot it in the interrogation room at the police station. We are required, however, to make an independent examination of the record and to determine whether the appellant's constitutional rights have been violated. *Brookhart v. Janis,* 384 U. S. 1, n. 4, 86 S. Ct. 1245, 16 L.Ed.2d 314 (1965); *Waine v. State,* 37 Md. App. 222, 377 A. 2d 509 (1977).

The parties agree, in view of the warrantless search of the jacket, that in order for the search to have been permissible it must have fallen within one of the recognized exceptions to the warrant requirement, and that failure to qualify under one of the exceptions would make the search *per se* unreasonable. *Coolidge v. New Hampshire,* 403 U. S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971); *Waine v. State, supra.*

The State urges that this search fell within the ambit of the inventory search exception as expressed by the Supreme Court in *South Dakota v. Opperman,* 428 U. S. 364, 96 S. Ct. 3092, 49 L.Ed.2d 1000 (1976), wherein the Court found that an inventory search of an automobile in police custody usually

flows out of the necessity on the part of police to inventory the contents of an automobile in order to secure or protect the car and its contents. The Court's rationale rested on the element of mobility of an automobile which warrants a privacy expectation significantly less than that relating to one's office or home, and which demands less rigorous warrant requirements than would normally attach to a search and seizure situation. *See Cardwell v. Lewis,* 417 U. S. 583, 94 S. Ct. 2464, 41 L.Ed.2d 325 (1974); *Camara v. Municipal Court,* 367 U. S. 523, 18 L.Ed.2d 930, 87 S. Ct. 1727 (1967). The Court in *Opperman, supra,* in a majority opinion approved the inventory procedure when it stated:

> When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, *United States v. Mitchell,* 458 F.2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property, *United States v. Kelehar,* 470 F.2d 176, 178 (CA5 1972); and the protection of the police from potential danger, *Cooper v. California,* 17 L.Ed.2d 730, 87 S. Ct. 788. The practice has been viewed as essential to respond to incidents of theft or vandalism. *See Cabbler v. Commonwealth,* 212 Va. 520, 522, 184 S.E.2d 781, 782 (1971), *cert. denied,* 405 U.S. 1073, 31 L.Ed.2d 807, 92 S. Ct. 1501 (1972); *Warrix v. State,* 50 Wis.2d 368, 376, 184 N.W.2d 189, 194 (1971). In addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned. [49 L.Ed.2d at 1005.]

The Court also opined at 1007 that:

> The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable. In the first such case,

Mr. Justice Black made plain the nature of the inquiry before us:

> "But the question here is not whether the search was *authorized* by state law. The question is rather whether the search was reasonable under the Fourth Amendment." *Cooper v. California,* 386 U.S., at 61, 17 L.Ed.2d 730, 87 S.Ct. 788 (emphasis added).

> "[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only '*unreasonable* searches and seizures.' The relevant test *is not the reasonableness of the opportunity to procure a warrant,* but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts." *Coolidge v. New Hampshire,* 403 U.S., at 509-510, 29 L.Ed.2d 564, 91 S.Ct. 2022 (concurring and dissenting) (emphasis added).

In *Duncan and Smith v. State,* 281 Md. 247, 259 (1977) the Court of Appeals held:

> [P]olice may, without regard to probable cause, and, thus, absent a warrant, constitutionally enter an automobile and unlocked compartments therein, and inventory and seize articles found, provided the vehicle had been otherwise legally taken into police custody and the inventorying was pursuant to a standard police procedure.

In *United States v. Chadwick,* 433 U. S. 1, 97 S. Ct. 2476, 53 L.Ed.2d 538 (1977), the Supreme Court distinguished between automobiles and luggage when a search incident to arrest and the automobile exception to the warrant requirement are involved. In *Chadwick,* federal agents, acting without a search warrant and without the consent of the arrested persons, but with a probable cause belief that a

footlocker they had lawfully seized from the open trunk of a parked automobile contained contraband, opened the footlocker over an hour after the arrests and discovered large amounts of marijuana. The Court found that once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest, but that there may be justifications for a warrantless search of luggage taken from a suspect *at the time* of his arrest where the officers have reason to believe that the luggage may contain some dangerous instrumentality. *See Shingleton v. State,* 39 Md. App. 527, 543, 387 A. 2d 1134 (1978).

Although we recognized in *Waine v. State, supra,* that *Chadwick* did not deal with inventory searches, we nevertheless saw "no reason why in an appropriate case an inventory search would not be as applicable to luggage as to automobiles, if the reasons for the station house inventory are as valid as the justifications for an automobile inventory." 37 Md. App. at 232-33. In deciding that "the police may, under appropriate circumstances, establish a routine procedure for inventorying the contents of any container lawfully seized," *id.* at 233, this Court tempered its decision in *Waine* by stating that the approval "of inventory searches does not provide a general license for the police to examine all the contents of the container"; that the inventory search must not be "inconsistent with protective custody"; and that to determine "[w]hether an inventory search was justified must depend on the facts of the individual search." *Id.* at 234.

In the recent case of *Cleckley v. State,* 42 Md. App. 80, 399 A.2d 903 (1979), police officers, while conducting a routine traffic stop noticed a revolver on the floor of the passenger compartment of the intercepted vehicle. The occupants of the car were arrested and taken to police headquarters. The investigating officer took custody of the appellant's vehicle and while driving to the station house noticed three ladies' purses on the front seat, opened them and observed their

contents. After further investigation, the officer determined that the purses were the fruits of robberies. He then inventoried the contents of the three purses which were subsequently admitted into evidence. We held that the contents of the purses should have been suppressed as the search of the pocketbooks "was not conducted pursuant to standard police procedure of securing and inventorying property under a community care-taking function," and that "[s]ince this search was 'investigative' in nature and conducted for the purpose of discovering evidence of a crime, it exceeded the scope of a bona fide inventory search." *Id.* at 85.

It is our responsibility, under the circumstances of the present case, to determine whether the officer's action in opening the zippered jacket pocket was a justified, reasonable search conducted for the protective purpose asserted.

The State acknowledges that inventory searches must be conducted in a non-investigative manner as part of a standard routine procedure and not conducted to discover evidence of crimes. *See Boone v. State,* 39 Md. App. 20, 30, 383 A. 2d 412, *aff'd with modification, State v. Boone,* 284 Md. 1, 393 A. 2d 1361 (1978).

Detective Morrissette gave this testimony as the basis for his search of the jacket:

Q. When you saw the jacket, realized whose it was, what did you assume you were going to do with it?
MR. PETROS: Objection.
THE COURT: Overruled. I will let him answer it.
THE WITNESS: I was — since I requested Mr. Herring to accompany me to the Oxon Hill Station for interviewing on other break-ins, and he had since left his property behind in my custody, it was my responsibility for that property.
BY MR. GALLAVAN:
Q. And what were you going to do with that property?
A. I was going to check for any valuable contents.

218

Q. Why were you going to do that?

A. Because I am responsible for contents which are left in my custody.

Q. And at the time you decided to check for valuable contents what did you plan on doing with the jacket and any contents you found?

A. Depending on the value of the contents. If they were not valuable, for example, cigarettes or something along that line, I would just put them back in the coat and lock them up in my desk. Since I discovered it was jewelry, noticed it was of some considerable value, locked them in my desk.

Q. Now, when you saw the jacket and made the decision to look for valuables in it, did you intend at that time to retain the jacket?

A. Until I could give it back to the owner, yes, sir.

Q. Does the department have any standards dealing with or relating to how to deal with property which is left in your custody at the station?

A. Yes, sir. There are numerous general orders as to abandoned property, property seized, contraband, property along that nature. We are held responsible for that property. No matter how it came into our custody, once it comes into our custody we are responsible for that property.

Q. And are you responsible for that property regardless of whether or not you are aware of what the contents of any particular objects were?

A. Yes, sir.

Q. Now, it was in checking to see if there were any contents of any value in the sweater when you said you discovered certain items of jewelry, is that correct?

A. Yes, sir.

The State admits that in spite of the detective's contention that the search of the jacket was an inventory search, no inventory of any kind was ever reduced to writing. The State

seeks to excuse this lapse on the basis of the following exchange between the State's Attorney and the detective:

Q. And when you discovered the items of jewelry marked State's Exhibit No. 2 what did you do?

A. I immediately noticed they were women's jewelry, a watch, two necklaces. Knowing that Mr. Herring is not married, knowing his past juvenile record involving break-ins, larcenies, crimes along that line, I immediately and positively considered them to be contraband.

The State argues that the search and seizure were made in this case because the detective felt he was responsible for the contents which were left in his custody. It cites as authority for this position, *Mickey v. Sears Roebuck,* 196 Md. 326, 76 A. 2d 350 (1950). Our reading of that case discloses that it does not support the legal position of the State. In *Mickey,* the plaintiff recited in his declaration: that he had cashed a check for the purpose of meeting his payroll and had put the proceeds in a leather briefcase he was carrying; that he then drove his automobile to the appellee's store to make a purchase; that while carrying his purchases from the loading platform to his automobile, he left the briefcase containing the money on the platform; that the briefcase was then taken in custody by one of the store's employees and placed in the property room of the appellee. The next morning when the appellant appeared at the company's property room he received his briefcase, but allegedly the cash was missing. The employee at the property room disclaimed all knowledge of the cash. In sustaining a demurrer to a declaration claiming damages against the company by the owner of the briefcase, the Court of Appeals stated the law to be as follows:

In the case of a gratuitous bailee, or bailee without reward, there is no contract and he is liable only for wrongful conduct. *Schermer v. Neurath,* 54 Md. 491, 496. The doctrine is derived from the civil law and many of the cases state that he is liable only for "gross negligence," following *Coggs v. Bernard,* 2 Ld. Raym. 909, but in *Maury v. Coyle,* 34 Md. 235,

> a prayer was approved that defined the liability of an unpaid bailee as "that he is bound to observe such care in the custody of property committed to his keeping, as persons of ordinary prudence in his situation and business, usually bestow in the custody and keeping of like property belonging to themselves." *Schermer v. Neurath, supra.* The appellee argues that in the instant case the placing of the briefcase in its property room demonstrates that ordinary care was exercised, there being no allegation that this was not a safe place. [196 Md. at 331.]

The act of the examination of the zippered pocket of the appellant's jacket caused to be imposed a greater degree of care on the police than would have been required had the police handled the jacket as they would normally have processed a misplaced chattel.

> In Williston, Contracts (Rev. Ed.) Sec. 1038A, in discussing "involuntary" bailees, it is said: "The general rule is that the bailment of a receptacle does not entail liability for inclosed articles other than those known to the bailee or ordinarily contained therein, though, of course, the bailee is under a duty of reasonable care to protect the receptacle in the condition in which it is received." [citations omitted] [196 Md. at 332.]

We distinguish here between the reduced expectation of privacy that an individual may have in an automobile as compared with an article of his clothing. When the detective noticed the jacket he knew to whom it belonged and had every reason to expect that the owner would return for it shortly, as he did approximately one half-hour after being released from the police station.

In order to justify the policeman's conduct in this case, we would be required to conclude from our own independent examination of the record that the detective acted in good faith in making the alleged inventory search, and not as a subterfuge to conduct a warrantless search for investigative

purposes. *Dixon v. State,* 23 Md. App. 19, 327 A. 2d 516 (1974). In view of all the circumstances in this case, we cannot conclude that the officer did, in fact, act in good faith. It is to be noted that at the very inception of this encounter, the detective testified that he suspected the appellant of being involved in unsolved breaking and enterings in the neighborhood where he saw the appellant. He articulated no factual basis for that suspicion. His action in "picking up" the appellant and taking him in for questioning was admittedly without probable cause. At the conclusion of the questioning, it is obvious that the detective had no probable cause as he permitted the appellant to leave the station. When the officer found the jacket, he knew to whom it belonged but made no effort to reach its owner in order to call the mislaid chattel to the owner's attention. The detective's statement as to why he conducted the search into the zippered pocket does not ring true. He had, at most, an unsupported suspicion that the jewelry he found in the zippered pocket was contraband. The failure to list the jewelry or to even prepare an inventory sheet is hardly supportive of his statement regarding the purpose for which he searched the jacket. The admission by the officer that the next morning he went through the reports on file of breaking and enterings in the area to attempt to match the jewelry held by him with items stolen in the reported breaking and enterings clearly indicates that the entire transaction was part of an attempt by the officer to discover evidence of crimes.

We said in *Dixon v. State, supra* at 40, that "where the conduct of the police was inconsistent with its contention that the search was conducted for inventory purposes, the search was unlawful." *Compare Mackall v. State,* 7 Md. App. 246, 251, 255 A. 2d 98 (1969) where the inventory of the contents of a suitcase in the trunk of an automobile was found to be a bona fide attempt to safeguard the owner's property; and *Kleinbart v. State,* 2 Md. App. 183, 199, 234 A. 2d 288 (1967) where the search of a suitcase in the trunk of an automobile was found inconsistent with protective custody.

We conclude that the detective in this case was not conducting a search of the appellant's jacket for the purposes

of preparing an inventory to safeguard the appellant's property, but was actively seeking evidence of the commission of a crime or crimes. Therefore, as this was a warrantless search not authorized under any of the recognized exceptions to the requirement that a warrant be obtained to search and seize property of an individual, it amounted to an unreasonable search. *Walker v. State,* 12 Md. App. 684, 280 A. 2d 260 (1971).

> *Judgment reversed, remanded for new trial, costs to be paid by Prince George's County.*