JAMES LEO MANALANSAN *v.* STATE OF
MARYLAND

[No. 1055, September Term, 1979.]

*Decided June 11, 1980.*

The cause was argued before THOMPSON, MOYLAN and
WEANT, JJ.

*Gerald A. Kroop* for appellant.

*William H. Kenety, Assistant Attorney General,* with
whom were *Stephen H. Sachs, Attorney General, William A.
Swisher, State's Attorney for Baltimore City,* and *John
Prevas, Assistant State's Attorney for Baltimore City,* on the
brief, for appellee.

Moylan, J., delivered the opinion of the Court.

We undertake the consideration of this appeal with the mental set still intact that we first articulated in *Dixon v. State,* 23 Md. App. 19, 20-21, 327 A.2d 516, to the effect that "no aspect of Fourth Amendment litigation has afflicted law enforcement with the yawning credibility gap wrought by inventory searches."

We begin with the bedrock proposition that the inventorying of the contents of an automobile is not a constitutionally-permitted investigative technique. A search for evidence within an automobile may only be undertaken pursuant to a validly issued search and seizure warrant, *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); warrantlessly where there is probable cause to believe that the automobile contains evidence of crime coupled with an exigency excusing the warrant requirement, *Carroll v. United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925); warrantlessly where all or some of the automobile lies within the reach, lunge or grasp of an arrestee, *Chimel v. California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and *Peterson v. State,* 15 Md. App. 478, 292 A.2d 714; or warrantlessly pursuant to valid consent, *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). The inventorying of the contents of an automobile, on the other hand, serves a noninvestigative purpose. In *Waine v. State,* 37 Md. App. 222, 232, 377 A.2d 509, Judge Thompson for this Court analyzed the then recent Supreme Court decision of *South Dakota v. Opperman,* 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976), and well set forth the purpose of the automobile inventory:

> "Three purposes which serve to legitimatize warrantless police intrusions into the interior of an automobile following its seizure were listed: (1) protection of the police from danger; (2) protection of the police against claims and disputes over lost or stolen property; and (3) protection of the owner's property while it remains in police custody.

Inventory searches, therefore, are not conducted in order to discover evidence of crime. They are conducted in accordance with police departmental policy to list what is in police custody. Probable cause to seek a search warrant would be irrelevant."

It is, furthermore, clear that in assessing the ultimate constitutional fact of whether a police intrusion into an automobile is a bona fide inventory or a subterfuge for an otherwise unpermitted investigative search, we are required to make our own independent, reflective judgment. *Walker v. State,* 12 Md. App. 684, 694-695, 280 A.2d 260; *Gardner v. State,* 10 Md. App. 233, 245, 269 A.2d 186; *Reagan v. State,* 4 Md. App. 590, 601, 244 A.2d 623. Judge Liss stated this standard of review most recently in *Herring v. State,* 43 Md. App. 211, 220-221, 404 A.2d 1087:

"In order to justify the policeman's conduct in this case, we would be required to conclude from our own independent examination of the record that the detective acted in good faith in making the alleged inventory search, and not as a subterfuge to conduct a warrantless search for investigative purposes."

See also *Cleckley v. State,* 42 Md. App. 80, 399 A.2d 903.

By these criteria, we now assess the convictions of the appellant, James Leo Manalansan, in a nonjury case in the Criminal Court of Baltimore City for 1) simple assault and 2) the unlawful possession of PCP. The appellant challenges the constitutionality of the search for and seizure of the PCP.

Although the appeal is technically from the assault conviction as well as from the unlawful possession conviction, the physical evidence now in question had no bearing on the assault case. The assault victim, Catherine Burke, testified that the appellant assaulted her by spitting in her face. Officer Thomas Gerst also testified that he observed this assault take place in his presence. The arrest for the assault preceded the now questioned search of the appellant's automobile. Since the only point now in issue

does not remotely bear upon the evidence of assault, the conviction for assault will be affirmed.

The search that produced the evidence for the unlawful possession case was the proximate result of the arrest for assault. An earlier altercation had occurred between the appellant and Catherine Burke. At the suggestion of another officer, Ms. Burke came to the Southern Police Station to apply for a warrant. Officer Gerst was sitting in his patrol car across the street from the police station when he observed the appellant drive up and call Ms. Burke over to the driver's window. Officer Gerst observed the appellant spit in Ms. Burke's face and then drive off. Ms. Burke entered the police station, came out a short time later and, with her friend, went to get in her car and drive away. Officer Gerst was still observing the scene when the appellant's car returned and double-parked in such a way as to make it impossible for Ms. Burke to get out of her parking place. Officer Gerst started up his own automobile, turned on the blue flashing dome light and moved his car in behind that of the appellant. The appellant moved on down the street and stopped. Officer Gerst approached him and placed him under arrest for assault. Thus far, the narrative is constitutionally unremarkable.

The appellant was still seated behind the wheel when Officer Gerst, from the window, informed him that he was under arrest. As he alighted from his automobile, the appellant took a grey container from his right front shirt pocket and laid it on the front seat of the automobile, toward the passenger's side. After he was out of the automobile, the appellant was placed in handcuffs. The officer then went into the automobile and picked up the container. He opened it and found that it contained a greenish substance which he believed to be PCP. He admitted quite candidly that he seized the container "to find out what was in it." The trial judge ultimately ruled that this seizure and subsequent search was unconstitutional since it was predicated upon the doctrine of search incident to lawful arrest and the item seized was beyond the reach, lunge or grasp of the arrestee. The evidence was, therefore, suppressed. Although this first

unconstitutional search is not now before us, it does throw light on the state of mind of Officer Gerst as he proceeded further into the automobile. Additional light was thrown on that state of mind when Officer Gerst was asked if the appellant appeared to be high in any way. Officer Gerst replied that he "appeared to be either drinking or on something." This observation by Officer Gerst, coupled with his discovery of suspected PCP, cannot be ignored as we attempt to resolve the question of whether the automobile search that followed was a mere bona fide listing of personal property or was a search for further evidence of drugs.

The subsequent search produced two hand-rolled cigarettes made from PCP and two clear plastic bags containing PCP. The officer testified that these items were recovered purely inadvertently in the course of a noninvestigative, routine inventory of personal property. The officer's characterization of the search, however, is not dispositive. In dealing with a similar situation, the Court of Appeals in *Duncan and Smith v. State,* 281 Md. 247, 261, 378 A.2d 1108, concluded quite otherwise:

> "[D]espite the disavowal of the searching officer, in light of the information within the knowledge of the officer and the scope of the search, there is the strong suggestion that the search was actually a pretext concealing an investigatory police motive. . . . As the police were not indisputably engaged in a caretaking search of a lawfully impounded automobile, the search and seizure cannot be said to be reasonable under the caretaking doctrine."

Upon our own independent, constitutional appraisal, we conclude that the further search of the automobile was pursuant to "an investigatory police motive" and was, therefore, unreasonable. Several factors combine to lead us to this conclusion. The first was the very decision to take the automobile into custody in the first instance. Everything that transpired in this case occurred within the shadow of the Southern Police Station. There is no indication that

when the appellant was arrested from his automobile that his automobile was not then at rest in a legitimate parking spot. If, *arguendo,* it was not, there was no showing of why the appellant himself or one of the officers could not have moved the automobile, within a few feet and within a few seconds, into a parking space, locked it and left it. The reasonableness of leaving the automobile essentially where it was is all the more prominent in view of the fact that the appellant was about to be taken into the station to be booked on a charge of simple assault by spitting. He would have been released on his own recognizance or on nominal bond within a very brief time and would then have been able to return to his car and to drive home. The necessity for impounding the car was not remotely demonstrated. It is simply not reasonable to tow a car away to avoid moving it to the curb, if such minimal movement was indeed necessary.

This situation contrasts sharply with the automobile inventory approved by the Supreme Court in *South Dakota v. Opperman, supra.* In approving the inventory there, the Court pointed out that the "owner . . . was not present to make other arrangements for the safekeeping of his belongings." 428 U.S. at 375. In the *Opperman* case, the Court concluded that there was "no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive." 428 U.S. at 376.

We have in the present case, moreover, the salient fact that the officer had already undertaken a search for evidence when he seized and then further inspected the grey plastic container, which was ultimately suppressed. ·

The method used by the police, additionally, belies the innocuous, noninvestigative purpose. A list was made of the probable evidence seized. All of that evidence was promptly taken to the laboratory for chemical analysis. No list was made, however, of nonevidentiary items, either by way of listing them or by way of indicating that none were present. The officer's failure of recall when it came to his search of the

glove compartment was representative of the general attitude toward the nonevidentiary aspects of the inventory:

"Q. Did you go in the glove compartment.
A. Yes, sir. I believe I did.
Q. Was anything in the glove compartment?
A. I don't recall.
Q. Did you make an inventory list of everything that you found in the car?
A. Everything that I took out of the car.
Q. Everything that you found in the car?
A. No, sir."

The discovery of the two PCP cigarettes is also indicative of an investigatory purpose. A silver cigarette case was found on the floor of the automobile. If a listing of valuable chattels were all that had been involved, the list would have included "one silver cigarette case." It was unlikely that a cigarette case would contain some other valuable item, itself worthy of special notation. In this case, however, the silver cigarette case was opened and not routinely closed. The observation was first made that the two cigarettes on the inside were "hand-rolled." A more searching observation was then made that beneath the covering paper was a substance that appeared to be not regular tobacco but suspected PCP. The whole process bespeaks an investigatory frame of mind.

In the back seat of the automobile was found a black bag, which was closed. The officer looked inside the bag and discovered two clear plastic bags which also contained a greenish substance. Both the black bag itself and the two small bags of greenish substance were seized and taken to the crime laboratory. The officer justified his opening of the bag on the ground that he "wanted to find out if any valuables were inside the bag." In dealing with a similar situation in *Waine v. State, supra,* Judge Thompson pointed out that under *United States v. Chadwick,* 433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977) (and now under *Arkansas v. Sanders,* 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235

(1979)), even probable cause coupled with exigency will not permit the police to open up suitcases, cartons and other containers. Even with probable cause, they are required to seize the suitcase or other container and keep it inviolate in the property room unless and until a warrant can be obtained. Judge Thompson there pointed out the irony of extending less protection to a citizen when his suitcase is being searched simply as an accommodation to himself and his property, saying at 37 Md. App. 234:

> "As pointed out by Justice Powell in his concurring opinion in *South Dakota v. Opperman, supra* 96 S. Ct. at 3102, the upholding of inventory searches does not provide a general license for the police to examine all the contents of the container."

From all of the above, we hold here, as we did in *Dixon v. State, supra,* at 23 Md. App. 38, "we cannot help but conclude that the officer's resort to an inventory rationale was a case more of investigative opportunism than of genuine solicitude for personal property."

> *Judgment of conviction for assault affirmed; judgment of conviction for unlawful possession reversed and case remanded for new trial; costs to be paid by the Mayor and City Council of Baltimore City.*