784 A.2d 601

**Brian Lewis PRESTON**

v.

**STATE of Maryland.**

**No. 1956, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Nov. 1, 2001.

---

Allen E. Burns, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted Before SALMON, JAMES R. EYLER and KRAUSER, JJ.

SALMON, Judge.

On April 12, 2000, a McDonald's fast food restaurant located on Eastern Avenue in Essex, Baltimore County, Maryland, was robbed by a lone gunman wearing a ski mask. Two days after the robbery, appellant, Brian Preston, was arrested for the McDonald's robbery pursuant to a valid arrest warrant. The arrest was made as appellant arrived at work and just after he had alighted from a Plymouth Neon automobile (hereinafter "the Plymouth"). Shortly after his arrest, appellant was taken to police headquarters, and the Plymouth was towed to a "crime lab/garage" owned by Baltimore County, where it was searched.

As a result of searching the passenger compartment of the Plymouth, the police found several items that incriminated appellant:

1. A twenty-two caliber Beretta handgun, later identified as the weapon used in the robbery; [1]

2. A blue knit ski mask;

3. A bag containing deposit slips, register receipts, petty cash vouchers, monopoly games, and other items belonging to McDonald's. The dates on these items ranged between March 31 and April 11, 2000.

---

[1]. Although it was not introduced at trial because it did not incriminate appellant, the police also found a black CO-2 type BB gun.

Prior to trial, appellant filed a motion to suppress the items recovered from the Plymouth. After an evidentiary hearing, the motions judge ruled that the warrantless search of the Plymouth at the police garage was valid as a search incident to appellant's arrest. Appellant was thereafter convicted by a jury of the armed robbery of the McDonald's as well as two related charges: first degree assault and use of a handgun in the commission of a crime of violence.

## I. QUESTIONS PRESENTED

1. Did the lower court err in denying appellant's motion to suppress the evidence found in the Plymouth's passenger compartment?

2. Assuming, *arguendo*, that the search should have been ruled invalid, was the denial of the motion to suppress harmless beyond a reasonable doubt?

We answer the first question in the affirmative, the second in the negative, and reverse.

## II. EVIDENCE PRESENTED AT THE SUPPRESSION HEARING

On the day following the robbery of the McDonald's, Detective Joseph Caskey of the Baltimore County Police Department questioned Shirlita Jackson, the McDonald's manager. During interrogation, Ms. Jackson said that she and appellant had conspired to commit the armed robbery and that the robbery plan was originated by appellant. According to Ms. Jackson's confession, appellant executed his plan by using a silver gun along with a black gun in robbing her (and two other McDonald's employees) on the morning of April 12, 2000. Based on the information provided by Ms. Jackson, a warrant for appellant's arrest was issued.

On April 14, 2000, several Baltimore County police officers were waiting for appellant to show up for work at a restaurant located in the White Marsh mall. Appellant arrived for work at 9 a.m. driving the Plymouth. He opened the door of the

vehicle and stood, but before he could close the car door he was arrested.

The police merely "glance[d]" at the interior of the Plymouth but did not search it while it was on the White Marsh parking lot. Instead, the vehicle was towed to the crime lab/garage and searched. Detective Caskey testified as follows:

Question [Prosecutor]: Why did you tow it [the Plymouth] back to the garage?

Answer: We towed it back to the garage so we could search it at the headquarters as opposed to searching it in the middle of the White Marsh mall parking lot.

Question: Why? Would there have been a problem if you searched it on the White Marsh mall parking lot?

Answer: It is just more convenient to have it done at headquarters where we didn't draw a crowd. We were drawing people around us, and we didn't want to do that. We wanted to take our time to search this car and not spend hours on the parking lot.

At the time the Plymouth was towed to the police garage, the police knew that the vehicle was owned by Brenda Marcus, who was the mother of appellant's girlfriend.

The only testimony produced at the suppression hearing as to *when* the Plymouth was searched was provided during cross-examination of Detective Caskey. After establishing that he was not present during the search of the Plymouth, Detective Caskey was asked by defense counsel:

It [the Plymouth] was probably searched at least two or three hours after the arrest, wasn't it?

Answer: I can look at the property sheets. I would assume so, yes.

The property sheets were not admitted into evidence at the suppression hearing.

Detective Todd Ford, who was one of the three officers who searched the Plymouth, testified that a duffle bag was found on the front passenger seat of the Plymouth. Detective Ford could not remember if the bag was opened or closed prior to

the search. Inside the bag was a CD case, and inside that case the police found a twenty-two caliber Beretta pistol. Elsewhere in the bag, the police discovered a "black CO–2 type BB gun." [2]

The prosecutor argued at the suppression hearing that a warrant to search the Plymouth was not necessary because the search was made incident to appellant's arrest. The prosecutor did not rely on any other exception to the warrant requirement.

During the hearing, the motions judge made it clear that he believed that, if the police could search the Plymouth at the place of arrest, the police could also search it at the police garage. For reasons discussed *infra*, we hold that he was wrong.

## III. *FIRST ISSUE*

### A. *Search Incident to Arrest Exception*

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). When a search is conducted without a warrant, the burden rests upon the state to prove that some exception to the warrant requirement applies.

A case factually similar to the one at bar is, coincidentally, one where the petitioner has the same surname as the appellant. In *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the petitioner and three other men sat parked in a motor vehicle in a business district under suspicious circumstances. *Id.* at 365, 84 S.Ct. 881. The men were arrested for vagrancy. *Id.* The petitioner and his cohorts were searched at the time of their arrest but the car was not.

---

**2.** The other items found in the vehicle mentioned, *supra*, were not discussed by either witnesses or counsel at the suppression hearing.

*Id.* Instead the car was driven by a police officer to the station house and from there it was towed to a garage where it was searched "[s]oon after the men had been booked at the station...." *Id.* In the car, the police found, among other things, two loaded revolvers, women's stockings (one with mouth and eye holes) and an "illegally manufactured license plate equipped to be snapped over another plate...." *Id.* at 365–66, 84 S.Ct. 881.

The issue in *Preston* was whether the search of the vehicle was lawful. *Id.* at 366–67, 84 S.Ct. 881. In *Preston*, as here, it was argued that the search was "incidental to a lawful arrest." *Id.* at 367, 84 S.Ct. 881. The Supreme Court held that it was not a lawful search and explained:

Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. This right to search and seize without a search warrant extends to things under the accused's immediate control, and, to an extent depending on the circumstances of the case, to the place where he is arrested. The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. *But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.* Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. The search of the car was not undertaken until

petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime—assuming that there are articles which can be the "fruits" or "implements" of the crime of vagrancy. Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. *We think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible.*

*Id.* at 367–68, 84 S.Ct. 881 (emphasis added) (citations omitted).

About three years after the *Preston* decision, the Supreme Court decided *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), where the Court upheld a search of an automobile even though the search was made at a police garage about one week after the defendant had been arrested. *Id.* at 58–59, 87 S.Ct. 788. Prior to the search in *Cooper*, the defendant had been arrested for selling heroin to a police informant. *Id.* at 58, 87 S.Ct. 788. The police impounded the petitioner's car immediately after his arrest because a state statute required that officers making arrests for narcotics violations "shall seize and deliver to the State Division of Narcotic Enforcement any vehicle used to store, conceal, transport, sell or facilitate the possession of narcotics...." *Id.* at 60, 87 S.Ct. 788. The statute further provided that after seizure the vehicle was "to be held as evidence until a forfeiture has been declared or a release ordered." *Id.* (emphasis removed). In *Cooper*, the California Attorney General admitted that the search had not been made incident to the defendant's arrest; instead, he argued that the search was reasonable on other grounds. *Id.*

The Supreme Court held that the search was reasonable because it was closely related: (1) to the reason the defendant was arrested, (2) the reason the car was impounded, and (3) the reason the police retained possession of the car. *Id.* at 61, 87 S.Ct. 788. The *Cooper* Court, in distinguishing *Preston*, observed that

"lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it," *ibid.*, the reason for and nature of the custody may constitutionally justify the search. Preston was arrested for vagrancy. An arresting officer took his car to the station rather than just leaving it on the street. It was not suggested that this was done other than for Preston's convenience or that the police had any right to impound the car and keep it from Preston or whomever he might send for it. The fact that the police had custody of Preston's car was totally unrelated to the vagrancy charge for which they arrested him. So was their subsequent search of the car. This case is not *Preston*, nor is it controlled by it. *Here the officers seized petitioner's car because they were required to do so by state law.* They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car—whether the State had "legal title" to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. The forfeiture of petitioner's car did not take place until over four months after it was lawfully seized. It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it. It is no answer to say that the police could have obtained a search warrant, for "the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable." Under the circumstances of this case, we cannot hold unreasonable under the Fourth Amendment the examination or

search of a car validly held by officers for use as evidence in a forfeiture proceeding.

*Id.* at 61–62, 87 S.Ct. 788 (emphasis added) (citations omitted).

The case at hand is factually akin to *Preston*, not *Cooper*. Here, as in *Preston*, there was no suggestion that the police had a right to impound the Plymouth or to keep it from appellant or its owner, Ms. Marcus. Moreover, the seizure of the Plymouth had no relationship to the reason appellant was arrested.

Six years after *Cooper*, the Supreme Court decided *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). *Edwards* involved a search of the defendant's clothing at the police station many hours after his arrest. *Id.* at 801, 94 S.Ct. 1234. Edwards was being held for attempted breaking and entering. *Id.* The arrest was made at 11:00 p.m., and Edwards was taken to jail at that time. Investigation at the burglary scene made "[c]ontemporaneously or shortly thereafter" Edwards's arrest revealed that "the attempted entry had been made through a wooden window, which apparently had been pried up ... leaving paint chips on the window sill and wire mesh screen." *Id.* at 801–02, 94 S.Ct. 1234. The next morning, Edwards's shirt, trousers and other articles of clothing were taken from him and held for evidence. *Id.* at 802, 94 S.Ct. 1234. Later testing of Edwards's garments revealed paint chips matching those from the window sill that had been pried open. *Id.* The Court held that the police could, at the time Edwards reached the police station, search and seize his clothing, even without probable cause. *Id.* at 804–05, 94 S.Ct. 1234.

Citing *United States v. Caruso*, 358 F.2d 184 (2d Cir.1966), the *Edwards* Court concluded:

*Caruso* is typical of most cases in the courts of appeals that have long since concluded that once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant *even though a substantial period*

*of time has elapsed between the arrest and subsequent administrative processing,* on the one hand, and taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial.

*Id.* at 807, 94 S.Ct. 1234 (emphasis added) (footnote omitted).

Three and one-half years after *Edwards, United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), was decided. In *Chadwick,* the Supreme Court said that searches incident to an arrest

may be conducted without a warrant, and they may also be made whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. The potential dangers lurking in all custodial arrests make warrantless searches of items within the "immediate control" area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved. *United States v. Robinson,* 414 U.S. 218[, 94 S.Ct. 467, 38 L.Ed.2d 427] (1973); *Terry v. Ohio, supra. However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," Preston v. United States,* 376 U.S. at 367[, 84 S.Ct. 881], or no exigency exists. Once law enforcement officers have reduced luggage or other personal property *not immediately associated with the person of the arrestee to their exclusive control,* and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

*Id.* at 14–15, 97 S.Ct. 2476 (emphasis added) (footnote omitted).

The Court held in *Chadwick* that a search at police headquarters of a padlocked two-hundred-pound foot locker that

was being transported by appellant in a motor vehicle when he was arrested was not "incidental to" Chadwick's arrest because the search was conducted "more than an hour after federal agents gained exclusive control of the footlocker and long after respondents were in custody." *Id.* at 15, 97 S.Ct. 2476.

Cases decided subsequent to *Chadwick* have distinguished between searches of items "closely associated with the arrestee" made at the police station and searches of luggage and other articles of personal property not immediately associated with the person of the arrestee. The former may be searched long after the arrest, while the latter may be searched only incident to the suspect's arrest. The pertinent law was summarized in *Curd v. City Court of Judsonia, Arkansas, et al.,* 141 F.3d 839 (8th Cir.1998), a section 1983 federal civil rights case in which the plaintiff's purse was searched at the station house after she was arrested on criminal charges. The Court said:

> The timeliness requirement is ... satisfied. The search took place at the station house about fifteen minutes after Curd was arrested. This delay could be fatal if, for example, a large piece of luggage were opened and inspected without a warrant. *See United States v. Chadwick,* 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (station house search of two hundred pound footlocker over an hour after arrest too remote in time and place for warrantless search incident to arrest); *United States v. $639,558 in U.S. Currency,* 293 U.S.App.D.C. 384, 955 F.2d 712, 715–16 (D.C.Cir. 1992) (luggage search half an hour after arrest not contemporaneous). The timeliness requirement for "luggage or other personal property not immediately associated with the person of the arrestee" is, in other words, constitutionally fairly strict. *See, e.g., Chadwick,* 433 U.S. at 15, 97 S.Ct. 2476.

> On the other hand, searches of the person and articles "immediately associated with the person of the arrestee," are measured with a different, more flexible constitutional

time clock. Compare *Chadwick*, 433 U.S. at 15, 97 S.Ct. 2476, and *United States v. Schleis*, 582 F.2d 1166, 1170 (8th Cir.1978) (en banc) (search of briefcase at station house not valid search incident to arrest); with *Edwards*, 415 U.S. at 803, 94 S.Ct. 1234 (search of clothing after an overnight stay in jail is a valid search incident to arrest), and *United States v. Phillips*, 607 F.2d 808, 809–10 (8th Cir.1979) (search of defendant's wallet at station house a "substantial period of time" after his arrest valid search incident to arrest). Searches of the person and those articles "immediately associated" with the person may be made either at the time of arrest or when the accused arrives at the place of detention. *Edwards*, 415 U.S. at 803, 94 S.Ct. 1234. Unlike luggage, courts considering the question have generally concluded that a purse, like a wallet, is an object "immediately associated" with the person. *See, e.g., United States v. Berry*, 560 F.2d 861, 864 (7th Cir.1977), vacated on other grounds, 571 F.2d 2 (1978); *United States v. Venizelos*, 495 F.Supp. 1277, 1281–83 (S.D.N.Y.1980); and State court cases within the Circuit—*Sumlin v. State*, 266 Ark. 709, 587 S.W.2d 571, 577 (Ark.1979) (en banc); *State v. Woods*, 637 S.W.2d 113, 116 (Mo.Ct.App.1982); *State v. Hershey*, 371 N.W.2d 190, 192 (Iowa Ct.App.1985). *But see United States v. Monclavo–Cruz*, 662 F.2d 1285, 1290 (9th Cir.1981) (purse like suitcase and briefcase, not clothing; search of purse at station house not valid as incident to arrest). In *United States v. Graham*, 638 F.2d 1111 (7th Cir.1981), the Seventh Circuit went a step further, holding that a purse was part of the defendant's person and that accordingly, a search warrant authorizing a search of the person covered the officer's search of the purse:

The human anatomy does not naturally contain external pockets, pouches, or other places in which personal objects can be conveniently carried. To remedy this anatomical deficiency clothing contains pockets. In addition, many individuals carry purses or shoulder bags to hold objects they wish to have with them. Containers such as these, while appended to the body, are so closely associated with

the person that they are identified with and included with the concept of one's person. To hold differently would be to narrow the scope of a search of one's person to a point at which it would have little meaning.

*Id.* at 843 (footnote omitted).

■ In the case at hand, there can be no doubt that the police could have searched the Plymouth's passenger compartment contemporaneous with appellant's arrest. In *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court set forth a "bright—line" rule for the search of automobiles incident to a valid arrest, *viz:* when the occupants of an automobile are arrested, the entire passenger compartment of the car constitutes the arrestee's "grabbing area" and that area (including containers, luggage, etc., within the passenger compartment) may be searched incident to the arrest, without a warrant and without probable cause to believe that the vehicle contains evidence of a crime. *Id.* at 460–61, 101 S.Ct. 2860. "[A]s long as the search and the arrest are essentially contemporaneous, a search may be analyzed under the principles governing searches incident to arrest." *Ricks v. State,* 322 Md. 183, 191 n. 2, 586 A.2d 740 (1991); *see also State v. Funkhouser,* 140 Md.App. 696, 731–32, 782 A.2d 387 (2001) (to be a valid search incident to an arrest, the arrest must be "essentially contemporaneous").

Searches have been deemed to be "essentially contemporaneous" with an arrest when made within a few minutes after the arrest even if the suspect, at the time of a search, has been placed in a police cruiser and handcuffed. *See State v. Fernon,* 133 Md.App. 41, 49–64, 754 A.2d 463 (2000), and the numerous cases cited therein.

■ In the case at bar, the State failed to prove that the search of the Plymouth was made "essentially contemporaneously" with appellant's arrest. Although the State did not prove exactly when the search occurred, it evidently occurred "at least two or three hours" post-arrest. A delay of that duration cannot be said to be "essentially contemporaneous." *See Chadwick, supra; see also Commonwealth v. Alvarado,*

420 Mass. 542, 651 N.E.2d 824 (1995) (a car searched two hours after it was towed to the police station was not a valid *Belton* search, which "must be made 'contemporaneous' with the arrest"); *United States v. Vasey*, 834 F.2d 782, 787 (9th Cir.1987) ("During the thirty to forty-five minutes that elapsed between the arrest and the warrantless search, the *Belton* Court's fear of forcing officers to make split second legal decisions during the course of an arrest evaporated and took with it the right of the officers to enter the vehicle under the guise of a search incident to arrest.").

Appellee cites *Terrell v. State*, 3 Md.App. 340, 239 A.2d 128 (1968), for the proposition that, "in some circumstances a search may be deemed incident to an arrest, although not conducted at the scene of the arrest, when it is made with reasonable promptness at a police station to which the vehicle was towed immediately following the arrest." *Id.* at 359, 239 A.2d 128 (quoting *Anthony, Smith and Thornton v. State*, 3 Md.App. 129, 133, 238 A.2d 130 (1968)). We will assume, *arguendo*, that this proposition is still true. *But see Preston*, 376 U.S. at 367, 84 S.Ct. 881 ("Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest."). Here, the State did not even attempt to prove that the search was made with "reasonable promptness." And, the State has referred us to no case, and we have found none, where *any* court has held that a search that takes place two or more hours after an arrest is nevertheless "essentially contemporaneous" with that arrest.

The State also relies on *Holland v. State*, 122 Md.App. 532, 713 A.2d 364 (1998), which it evidently interprets as meaning that there is now a "search following arrest" exception to the warrant requirement.

In *Holland* the defendant was lawfully arrested and taken to the police station. *Id.* at 535, 713 A.2d 364. About fifteen minutes after Holland's arrival at the police station, his clothing was searched and a key to Room 136 of a local motel was found along with some other personal items. *Id.* at 536, 713

A.2d 364. The items were taken to a "property room or storage locker." *Id.* at 535, 713 A.2d 364. Several hours later, during the interrogation of one of Holland's associates, the police learned that Holland and one of his cohorts had been in possession of a key to Room 136. *Id.* Armed with this information, the police looked again at what they had already taken from Holland and found the key. *Id.* at 536, 713 A.2d 364. Prior to trial, Holland moved to suppress evidence that he was in possession of the key. We held that *Edwards* was directly dispositive of that argument and, accordingly, rejected it. *Id.* at 540–41, 713 A.2d 364. The *Holland* Court made clear that the *Edwards* rule dealt only with searches at the station house of a suspect's person and the property in his immediate possession. Judge Charles Moylan, for this Court, said:

> The *Edwards* opinion, 415 U.S. at 803, 94 S.Ct. 1234, cited to *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), wherein the Supreme Court had held that it was immaterial whether the defendant's property was immediately seized and searched at the time of his initial arrest at his hotel or thereafter at the place of detention. The *Edwards* Court went on:
>
>> The courts of appeals have followed this same rule, holding that *both the person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place* and if evidence or crime is discovered, it may be seized and admitted in evidence. *Nor is there any doubt that clothing or other belongings may be seized upon arrival of the accused at the place of detention and later subjected to laboratory analysis* or that the test results are admissible at trial.
>
> 415 U.S. at 803–04, 94 S.Ct. 1234 (Footnotes omitted; emphasis supplied).

The Supreme Court went on to explain that a delayed "search incident" does not intrude any more on a protected right than a more immediate "search incident" would have done:

This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention. The police did no more on June 1 [the day after Holland's arrest] than they were entitled to do incident to the usual custodial arrest and incarceration.

415 U.S. at 805, 94 S.Ct. 1234.

It was clear, moreover, that the property subjected to the delayed search was already in the lawful custody of the police and, therefore, not immune from examination by them:

It must be remembered that on both May 31 [the date of Holland's arrest] and June 1 the police had lawful custody of Edwards and necessarily of the clothing he wore. When it became apparent that the articles of clothing were evidence of the crime for which Edwards was being held, the police were entitled to take, examine, and preserve them for use as evidence, just as they are normally permitted to seize evidence of crime when it is lawfully encountered.

415 U.S. at 806, 94 S.Ct. 1234 (Emphasis supplied).

*Id.* at 537–38, 713 A.2d 364.

Because the *Edwards* rule only applies to searches at the station house of "the person and the property [of the suspect] in his immediate possession" as opposed to delayed searches of personal property not immediately associated with the person of the arrestee, *Holland* does not aid the State because the article seized—the room key—was in Holland's pocket when it was seized and thus immediately associated with his person. Our opinion in *Holland* is in complete accord with the approach taken elsewhere. The relevant status of the law was succinctly summed up in Wayne R. LaFave, 3 *Search and Seizure—A Treatise on the Fourth Amendment* 110–12 (3d ed.1996), *viz:*

[O]n incident-to-arrest grounds, it has been held that at the station (provided, of course, that the arrestee is still in custody) the police may search through the arrestee's pockets, wallet, other containers on the person, and even underclothing, may require the arrestee to strip and may seize incriminating objects thereby revealed. It is not necessary that there be advance probable cause that such objects will be found. Indeed, it may be said more generally that the courts assume that this search may be just as extensive as could have been made under *Robinson* at the scene of the custodial arrest, and this is so even where the arrestee's access to the object searched was terminated between the time of arrest and the time of the search. That is, the scope of the search at the station is not limited to items *then* in the "immediate control" of the defendant; it is sufficient that *the items were on his person at the time of arrest.* The notion seems to be that Robinson recognized that anything on the person was "fair game" for a search, and that the opportunity of the police to search should not be more limited merely because there may have been reasons making a full search there impractical or because the police opted for the less humiliating alternative of a search in the privacy of the stationhouse.

*Id.* (footnotes omitted) (emphasis added).

Here, the search at issue had nothing whatsoever to do with the search of an arrestee at the stationhouse, nor are we here concerned with the search of an arrestee's personal effects in his possession at the time of the arrest. We therefore hold that the trial court erred in ruling that the automobile search was valid as a search incident to appellant's arrest.

### B. *Probable Cause Exception*

As an alternative argument, the State maintains that, even if the search was not "incident to" appellant's arrest, the police nevertheless had "probable cause" to believe that guns would be found in the vehicle. "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle

without more". *Maryland v. Dyson,* 527 U.S. 465, 467, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999) (citing *Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)). Before addressing the merits of this argument, we note that at the suppression hearing the State never claimed that the police had "probable cause" to search the vehicle, nor did the motions judge find that probable cause existed.

■ According to the evidence presented at the suppression hearing, at the time the Plymouth was searched, the only information the police had concerning that automobile was:

1. It was owned by the mother of appellant's girlfriend; and

2. appellant was driving the vehicle at the time of his arrest.

No evidence presented at the suppression hearing indicates that the police, at any time, knew whether the armed robber had used a motor vehicle in the commission of the crime, and so far as was shown in the record, the police had no knowledge as to whether appellant usually drove the Plymouth or even whether he had *ever* driven the Plymouth prior to the date of his arrest. Although the police had learned from Ms. Jackson, the McDonald's manager, that two handguns had been used in the armed robbery, no one testified at the suppression hearing that the police had any particular reason to suspect that guns—or any other inculpatory evidence linking the appellant to the robbery—might be found in the Plymouth. Under these circumstances probable cause was not shown. *See Carroll v. State,* 335 Md. 723, 735, 646 A.2d 376 (1994) (mere suspicions by the police do not equal probable cause to search).

The State relies on *State v. Ward,* 350 Md. 372, 712 A.2d 534 (1998), in support of its argument that the police had probable cause to search the Plymouth. *Ward* on its face is distinguishable because in that decision no exception to the warrant requirement was even mentioned. In *Ward,* the police had a warrant to search the defendant's vehicle and home. *Id.* at 374, 712 A.2d 534. The issue presented was whether the

affidavit upon which the warrant was issued was sufficient to show a nexus between the item sought (a gun) and the place to be searched (Ward's house and car). *Id.* at 375, 712 A.2d 534. Judge Raker, for the *Ward* (4–3) majority, said:

> The instant matter is not a clear cut case and, obviously, it would have been much more helpful had the affidavit contained more detail. The issue of the validity of this search has been examined since 1992 in two separate cases, at three levels of court, with the result that seven judges have concluded that there was probable cause and six judges have concluded that there was not. Seemingly the instant matter is a classic illustration of the "doubtful or marginal cases" referred to by the Supreme Court in *United States v. Ventresca,* the resolution of which "should be largely determined by the preference to be accorded to warrants." 380 U.S. [102] at 109, 85 S.Ct. [741] at 746, 13 L.Ed.2d [684] at 689 [1065]. *See also Mills v. State,* 278 Md. at 280, 363 A.2d at 501.

*Id.* at 389, 712 A.2d 534.

The case at hand is distinguishable from *Ward* in at least three important respects:

1. The police knew that Ward owned a particular vehicle and the warrant was to search that vehicle—here, we don't know whether appellant owned any automobile, nor do we know whether he had ever driven the vehicle searched at any time prior to the morning of his arrest;

2. In *Ward* the magistrate, through the use of inferences drawn from facts in an affidavit, could have inferred that the suspect had not yet disposed of the murder weapon prior to the issuance of the warrant, 350 Md. at 377, 712 A.2d 534, whereas in the case at hand, there were absolutely no facts from which the inferences (that the robber had not yet disposed of the guns or that guns would be found in the car) could have been drawn;

3. In *Ward,* the police applied for and were issued a warrant to search the automobile. *Id.* at 375, 712 A.2d 534. Here, no search warrant was applied for or issued.

Therefore, there is no reason to give a "close call" to the State due to "the preference to be accorded to warrants."

Because of the aforementioned differences, *Ward* is inapposite. The State simply failed to meet its burden to show that it had probable cause to search the Plymouth.

### C. *Inventory Search*

■ The State also contends that the search of the automobile was justified as an inventory search. This contention will not detain us long. Detective Caskey testified that the vehicle was searched for evidence. That testimony was uncontradicted and is fatal to the State's claim that the police were merely conducting an inventory when they discovered the guns and other incriminating items. *See Manalansan v. State,* 45 Md.App. 667, 672, 415 A.2d 308 (1980).

## IV. *SECOND ISSUE*

■ The State contends, in the alternative, that, even if the trial judge erred in allowing it to introduce the gun, ski mask, and the receipts, vouchers, etc., admission of those items was harmless beyond a reasonable doubt. We disagree.

Admittedly, the State had a very strong case against the appellant even without admission of the items found in the Plymouth. The State proved that appellant confessed that he robbed the McDonald's after he had been advised of, and waived, his *Miranda* rights.[3] In addition to the confession, Detective Caskey testified, without objection, that Sheritta Jackson told him that she and appellant had conspired to rob the restaurant. Nevertheless, as strong as the State's case would have been without the items illegally seized, it simply cannot be said, beyond a reasonable doubt, that appellant was not harmed when the State introduced into evidence the fruits of their search. Ms. Jackson was not called as a witness at

---

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

trial, and neither of the two victims of the armed robbery were able to identify appellant as the robber.

In lieu of eyewitness identification of appellant as the robber, the State introduced into evidence the twenty-two caliber Beretta pistol found in the Plymouth. The Beretta was then identified by one of the McDonald's employees as the gun used in the robbery by the masked gunman. A police expert testified that this Beretta was fully operational. Moreover, the receipts and other property belonging to McDonald's, bearing dates as late as the day before the 5:00 a.m. robbery, were extremely incriminating. Those items, coupled with the ski mask and gun, turned a strong case into an open and shut one. We therefore hold the introduction of the fruits of the illegal automobile search was not harmless beyond a reasonable doubt.

**JUDGMENT REVERSED; COSTS TO BE PAID BY BALTIMORE COUNTY.**